## J. W. DAVIS v. THE STATE.

No. 2948. Decided January 21, 1914.

Rehearing denied February 11, 1914.

**1.—Murder—Evidence—General Reputation—Bill of Exceptions.**

Where, in support of defendant's contention that deceased had been guilty of insulting conduct towards defendant's wife he had introduced testimony of the general bad reputation of deceased for lewdness, and the State, in rebuttal thereto, had introduced testimony that the general reputation of deceased

was good, it was harmless error not to permit defendant, on cross-examination, to ask the witness if it was not common current report that deceased was keeping lewd women, the court instructing the jury that if defendant was informed that the insulting conduct had taken place it would make no difference whether deceased was in fact guilty thereof; besides, the bill of exceptions was defective.

### 2.—Same—Adequate Cause—Insulting Conduct Towards Female Relative.

Where, upon trial of murder, there was evidence of insulting conduct by deceased towards defendant's wife, and the court instructed the jury that if defendant was informed of such conduct, etc., that the same would constitute adequate cause and reduce the offense to manslaughter, and simply left the question as to whether or not this produced such anger, etc., in the mind of the defendant as to render it incapable of cool reflection, the contention that the question as to whether insulting conduct would be adequate cause was left to the jury is untenable, and there was no error.

### 3.—Same—Evidence—Motive—Ill-will—Witness.

While it is always permissible to show the state of feelings of a witness towards the parties, yet, where the bill of exceptions only recited that defendant expected to prove that the father of the defendant did not patronize a certain gin that the deceased patronized, and did not show what the witness would have testified, there was no error in sustaining an objection to said question; besides, defendant's testimony itself and that of his witnesses showed no such state of facts existed.

### 4.—Same—Evidence—Self-serving Declarations.

Where defendant was permitted to testify his reasons why he intended to move off the place of deceased, there was no error in excluding a self-serving declaration that he had told others this was his reason, subsequent to the time that the defendant was shown to have made the remark that deceased accused him of whipping his, defendant's, wife, and that he would have to prove it or eat his words.

### 5.—Same—Exculpatory Statement—Charge of Court.

Where, upon trial of murder, defendant testified as to the conduct of deceased at the time of the killing, but denied making any statement to the State's witness how the difficulty occurred, the fact that this witness testified that defendant had stated among other things that deceased had his gun and had one barrel cocked, and the contention that the court should have submitted defendant's special charges presenting the issue of exculpatory statements by defendant was untenable; the court having fully and fairly submitted the issue of self-defense as made by defendant's own testimony.

### 6.—Same—Indeterminate Sentence Law—Punishment.

Under the indeterminate sentence law, the court correctly required the jury to assess the punishment, and the contention that the jury has no power to do so because it had not assessed the death penalty in a murder trial is untenable.

### 7.—Same—Indeterminate Sentence Law—Reforming Judgment and Sentence.

Where, upon trial of murder, the indeterminate sentence law passed at the called session of the Thirty-third Legislature was effective at the time of the trial, defendant was entitled to the benefit of the same, and the trial court erred in not passing sentence thereunder, but it is not such error as calls for a reversal of the case, as under article 938, Code Criminal Procedure, it is the duty of this court to reform and correct the judgment according to the verdict of the jury so as to comport with said indeterminate sentence law, which is accordingly done.

**8.—Same—Charge of Court—Filing Objections—Article 743.**

Where appellant in his motion for rehearing complained of certain paragraphs of the charge of the court to which he filed no objections at the time of the trial, the same can not be considered on appeal under article 743, Code Criminal Procedure, as amended; besides, there was no reversible error if such objections were considered.

**9.—Same—Harmless Error—General Reputation.**

While it was permissible, on the question of general reputation of deceased as a chaste and virtuous man, to test the knowledge and credibility of the witness who had testified that such reputation was good, yet, where defendant relied on insulting conduct to his wife by the deceased, and the court correctly submitted that issue, it was harmless error in not permitting defendant to propound the question to said witness if it was not a matter of common current report that deceased was keeping other women.

Appeal from the District Court of Freestone. Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*R. L. Williford* and *R. M. Edwards,* for appellant.—On question of manslaughter and sudden passion: Gillespie v. State, 53 Texas Crim. Rep., 167, 109 S. W. Rep., 158.

On question of self-serving declarations: Brumley v. State, 71 Texas Crim. Rep., 239.

On question of general reputation of deceased: Forrester v. State, 42 S. W. Rep., 400; Newell v. State, 66 Texas Crim. Rep., 177, 145 S. W. Rep., 939; Holbert v. State, 9 Texas Crim. App., 219; Underhill Crim. Ev., sec. 82, p. 103.

On question of bias of witness: Burnham v. State, 148 S. W. Rep., 757.

On question of statutory adequate cause: Gillespie v. State, 53 Texas Crim. Rep., 167, 109 S. W. Rep., 158; Redman v. State, 52 Texas Crim. Rep., 591, 108 S. W. Rep., 365; Reagan v. State, 157 S. W. Rep., 483.

On question of exculpatory declarations: Combs v. State, 108 S. W. Rep., 649; Menefee v. State, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 138; Winkler v. State, 58 Texas Crim. Rep., 564, 126 S. W. Rep., 1134.

On question of indeterminate sentence law: People v. Adams, 63 L. R. A., 406; Miller v. State, 40 L. R. A., 109; Murphy v. Com., 43 L. R. A., 154.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of murder, and his punishment assessed at ten years confinement in the penitentiary.

That appellant killed deceased is proven both by the testimony of

the State and the defendant. The State's witness, Joe Bryant, says that he and deceased started to the woods to cut out a road, and both had axes in their hands; that deceased's wife asked him to try and kill a squirrel for a sick child, and deceased also had a gun in his hands. That as they started out of the "tramp lot" appellant appeared at the gate, advanced toward them, and raised his gun, when deceased jumped behind him; that he, Bryant, jumped out of the way, when appellant fired, killing deceased. He would have deceased making no demonstration, but endeavoring to get behind him and out of the way when he was killed.

The only other person present at the killing was appellant. He says he was at the gate on his way to a neighbor's, and when deceased came near him, deceased raised his gun as if to shoot him, when he, appellant, believing his life was in danger, fired and killed deceased.

The court in his charge submitted the issue of self-defense very favorably to appellant, and in a way not complained of by him; so that may be said to pass out of the case. However, there are two theories as to motives for the homicide. Appellant contends that on Sunday, the day before the homicide, he had been informed by his wife that deceased had made improper proposals to her, and this was the first time he had met deceased since being so informed. His wife supports him in this contention, she saying that on Sunday morning deceased made improper proposals to her for the third time; using her language, she says: "I had gone to the creek after water, and I met Sam down there and he asked me if my husband had come back, and I told him no, and he said, 'Coot, this is as good a place as we will ever have.' And I said, 'What for?' And he said, 'You know what I have been asking you for; well, you are going to do that today.' And I started by him and he caught me by the arm and I jerked loose from him and he tore one side of my dress nearly off, and holloed and called my husband. I holloed three times. This all happened between 11 and 12 o'clock. My husband was not at home at that time; he had gone over to Judith Tippins. My husband came home that night about eight o'clock. I told my husband about what Sam Wilson had done and said that morning." To support the contention that deceased had made improper proposals to his wife, appellant introduced several witnesses who testified that the general reputation of deceased for lewdness was bad in the community where he lived. In rebuttal the State introduced W. G. Duncan, who testified that the general reputation of deceased was good. On cross-examination, among other questions propounded to him by appellant's attorneys, he was asked if it "was not common, current report that deceased was keeping Pearl Howard and keeping Sarena Durham." Where a witness swears to the good reputation of deceased in any respect, on cross-examination the defendant should be allowed broad latitude in testing the witness' knowledge, and especially should defendant be permitted to ask if he did not know reports were circulated derogatory in respect to the matter to which he has sworn to a good reputation,

and if the bill had stated that the witness would have testified that such was the "common, current report" it perhaps would present error; however, the bill does not state that the witness would have so testified, but merely recites that he "expected" or hoped so to show. It may be that if the witness had been permitted to answer the question, he would have testified that it was not a matter of "common, current report"; the bill contains no allegation that he would have so testified. In addition, the issue in this case was not whether in fact deceased had made improper proposals to the wife, but had he been so informed, and this would have no tendency to show that he had been so informed. In the charge the court instructed the jury that if appellant was informed that the insulting conduct had taken place, it would make no difference whether or not deceased was in fact guilty of such conduct or not. So that this testimony would have but a slight tendency to support the main issue, therefore the ruling of the court would not present reversible error. And on this issue the court instructed the jury: "By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, sudden resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. The following are deemed adequate causes: (a) Insulting words or conduct toward the wife of the defendant; (b) any condition or circumstance which would render the mind of a person of ordinary temper incapable of cool reflection." He further instructed the jury: "You are instructed that if you find from the evidence in this case, that defendant J. W. Davis, before the killing, was informed and believed that Sam Wilson had been guilty of insulting conduct toward his wife, or had uttered insulting words regarding her; and if you further believe that such information produced in J. W. Davis' mind a condition of anger, rage, sudden resentment or terror sufficient to and which did render his mind incapable of cool reflection; and if you further believe that J. W. Davis, upon the first meeting with Sam Wilson after he had been informed of such insulting words or conduct, if any, shot and killed Sam Wilson because of said insulting words or conduct, and the influence thereof upon his mind; then, if you so believe, you can not find the defendant guilty of any higher grade of offense, if any, than of manslaughter, it makes no difference whether you believe that Sam Wilson was guilty of the insulting conduct or of uttering the insulting words concerning defendant's wife or not."

The contention made is that the court left to the jury the question of whether or not insulting words would be adequate cause to reduce the offense to manslaughter. By the paragraphs above copied, as well as the remainder of the charge, it will be seen that such contention has no foundation in the record, but the court specifically told the jury that this would be adequate. The question he submitted to the jury was whether or not this did produce such anger, rage, resentment or terror as to render the mind incapable of cool reflection, and in this the learned trial judge was correct. Adequate cause may exist as a mat-

ter of law (and in this case the court instructed the jury if appellant was informed that deceased had used improper language or made indecent proposals to the wife, this would be adequate cause), but whether or not this adequate cause produced that condition of mind to reduce the offense to manslaughter is always a question of fact to be determined by the jury, and the criticisms of the court's charge in this respect are without merit. Massie v. State, 30 Texas Crim. App., 64; Jones v. State, 47 Texas Crim. Rep., 515; Gillespie v. State, 53 Texas Crim. Rep., 167; Jones v. State, 33 Texas Crim. Rep., 492, and cases cited in Willson's Ann. Stat. under title "Manslaughter."

The State undertook to show a different motive for the killing. By the wife of deceased it showed that on Sunday morning appellant was at deceased's house, and during their conversation deceased accused him of fighting his wife. Appellant denied he and his wife had any fight, but admitted he passed deceased's house that morning and deceased accused him of mistreating his wife. Sarena Durham, Pearl Howard and Fannie Durham testify that they met appellant in the road Sunday, and appellant said, "That Sam Wilson (deceased) had told a lie on him that morning about him whipping his wife, and that it would be settled in less than two weeks." Judith Tippins testified that appellant was at her house on Sunday and said that deceased had out a report on him about him whipping his wife; that he did not whip his wife, and when he saw deceased, "He would have to prove it or eat it." Abe Jones testified that shortly after the killing on Monday morning, appellant came through his bottom field and told him he had killed Sam Wilson that morning, and when asked what was the matter said, "On Sunday morning he went to Sam's house and he owed Sam a day and a half's work, and Sam asked him for that, and accused him of beating his wife." He further said that he and Sam had had some trouble about a little pig running out, and claimed that Sarena Durham had told him some things, but did not say what they were, and appellant then asked him how long the court would send him up for, and witness replied to appellant that he might plead self-defense, when appellant remarked that Sam had his gun up and right barrel cocked. In cross-examination of the witness Abe Jones appellant asked him, "If it was not true that deceased and his people ginned their cotton at his gin, while defendant's daddy and his people did not do so." The State objected to the testimony, and the objection was sustained. Appellant being a married man, and not being with his father, what his father did or did not do would not be a material inquiry, but if by the words "his people" was intended to include appellant, and it was intended to show that the witness Jones entertained animosity towards him because he would not gin his cotton with him, the testimony would be admissible. It is always permissible to show, in a murder case, the state of feelings of a witness toward the deceased, or the defendant on trial on cross-examination of the witness. However, in the bill it is recited only that defendant "expected" to prove by the witness that the *father* of defendant did

not patronize the gin, and nowhere states that it could have or would be sought to prove that appellant did not gin his cotton with the witness. But the bill does not go further and state that the witness would have testified, or that it could be proven that appellant's father did not gin with the witness, and that Wilson (deceased) did gin with him. The bill would indicate that appellant was on a "fishing expedition" and did not know whether or not such facts were true, but says the testimony "might" have shown feeling or bias. If the bill had stated that the witness would have so testified, or that such facts were true, then such testimony is admissible under all the decisions, but the bill as drawn contains no such recitations, and if we were to presume that the witness would so testify, and on another trial, the witness should testify that such were not the facts, it would put this court in a ridiculous light. In such case, the bill must show that the witness would have so testified, if he had been permitted to answer the question, or if he did so testify, proof would be offered that such were the facts, to present reversible error. Appellant's father testified in the case as did appellant, and the wife of deceased, and we have examined their testimony critically, and by none of them is it proven or sought to be proven that such a state of facts existed.

All the evidence offered by defendant to show that he intended to move off the place of deceased was admitted. Appellant was permitted to so testify, and states his reasons why he intended to do so, but the court excluded what he had told others was his reason. In this there was no error, for it would be but a self-serving declaration, made subsequent to the time witnesses testify that appellant had made the remarks hereinbefore cited about deceased accusing him of whipping his wife, and that he would have to "prove it or eat his words," and that "it would be settled in less than two weeks."

The only other bills of exception in the record complained as the State introduced in evidence the statement of defendant made to Abe Jones on the morning of the homicide, and appellant in that statement, when Abe Jones replied that he might plead self-defense, replied that "Sam, deceased, had his gun up, and had the right barrel cocked," the court ought to have charged as the law of the case that as the State had introduced the confession or admission of defendant, the State is bound by such statements, unless shown to be false. Defendant also requested two special charges presenting this issue, which were refused. Appellant testified as a witness for himself, and testified to the same facts as to the conduct of deceased at the time of the killing, but denied in toto making any statement to the witness about how the difficulty occurred. The court presented the issue of self-defense fully and fairly as made by this testimony, and in a way not complained of by appellant, and it was a sufficient presentation of that issue made by the testimony. The jury would necessarily be compelled to find that statement false, under the charge as given before they would be authorized to find appellant guilty of any offense.

That ground in the motion which seeks to raise the question, that "the jury not having assessed the death penalty, it had no power or authority to assess his punishment at a fixed number of years, the extent of their power being to find the appellant guilty, the court then assessing an indeterminate sentence," is without merit. This court had declared the first indeterminate sentence law void, and the court correctly required the jury to assess the punishment. However, in his brief, and argument before this court, appellant's counsel seeks to raise a question not presented in the record before us, that the indeterminate sentence law passed at the called session of the Legislature provides that the jury shall assess the punishment, but if the jury assess the penalty at a greater number of years than the minimum term fixed by law for such defense, that the court should pronounce sentence that appellant be confined in the penitentiary for a number of years not less than the minimum penalty fixed by law, and not more than the number of years fixed by the jury in their verdict. Inasmuch as the indeterminate sentence law passed at the called session of the Thirty-third Legislature became effective August 18, 1913, and this trial was not had until in September thereafter, appellant was entitled to the benefits of the provisions of the law, and the court erred in not passing sentence thereunder, but it is not such error as calls for a reversal of the case. Article 938 of the Procedure specifically provides that this court may reform and correct the judgment in criminal cases as the law and the nature of the case may require. This court in construing this article of the Code has held that it was mandatory in its terms, and it was our duty to reform and correct the judgment, when under the law and the facts manifest of record an incorrect judgment has been entered upon the verdict of the jury. Robinson v. State, 58 Texas Crim. Rep., 550, 126 S. W. Rep., 276; Carr v. State, 9 Texas Crim. App., 463; Rivers v. State, 10 Texas Crim. App., 177; Lanham v. State, 7 Texas Crim. App., 126; Short v. State, 23 Texas Crim. App., 312; Robinson v. State, 24 Texas Crim. App., 4; Jackson v. State, 25 Texas Crim. App., 314; Thomas v. State, 31 Texas Crim. Rep., 82; Purcelly v. State, 29 Texas Crim. App., 1; McCorquodale v. State, 54 Texas Crim. Rep., 344. In this case the jury found appellant guilty of murder, and assessed his punishment at confinement in the penitentiary for ten years. Under the provisions of chapter 5 of the Acts of the special session of the Thirty-third Legislature he was entitled to have sentence passed on him that he be confined in the penitentiary for not less than five nor more than ten years. Instead of pronouncing such sentence, the court passed sentence that he be confined in the penitentiary for a fixed term of ten years. We can readily understand how the court fell into this error, for the Acts passed at the special session of the Legislature had not been printed at the time this case was tried, but under article 938 and chapter 5, of the Acts of the Thirty-third Legislature, it becomes our duty to reform and correct the sentence in accordance with the law as it existed at the time of the trial, and the clerk of this court is ordered to prepare and

enter an order reforming and correcting the sentence of the trial court, and such order and judgment shall provide that appellant shall be confined in the penitentiary in accordance with the verdict of the jury and the law of this State for not less than five nor more than ten years, and a copy of said order correcting the sentence, together with this judgment, shall be certified to the court below to be entered upon the minutes of the court.

We have carefully considered every question raised by appellant. The court's charge in this case, when read as a whole, we think, aptly applied the law to the evidence adduced, and it is subject to none of the criticisms leveled at particular paragraphs of the charge.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### February 11, 1914.

HARPER, JUDGE.—Appellant in his motion for a rehearing undertakes to complain of paragraphs of the charge of the court to which he filed no objections at the time of the trial. The sole objections presented to the court read as follows.: "Now comes the defendant, J. W. Davis, by his attorneys, and presents his objections to the court's charge herein, as follows, towit: The defendant excepts and objects to paragraph No. 10 of the court's charge, because said paragraph refers the jury to what words the deceased might have spoken to the wife of defendant, and refers them to the conduct of deceased towards the wife of defendant, and then submits the matter to the jury, to determine whether or not these words and conduct constituted adequate cause. Whereas the court should have charged the jury, that if they believed the deceased was guilty of insulting words or conduct towards the wife of defendant, that same was, under the statute, adequate cause. The defendant objects and excepts to the court's charge as a whole, because same nowhere instructs the jury that when a confession or admission of defendant is introduced in evidence by the State, and same is relied on by the State, and when said confession or admission contains statements in favor of deceased, and same are shown to be false, the State is bound by such statements." We discussed these propositions in the original opinion, and these matters are not again presented, but a contention is now made to which no exception was taken in the court below. Under article 743 as amended by the Thirty-third Legislature, we are not authorized to consider such assignments, but were we to do so, the contention now made would not present error. The contention is that the court erred in using the word "sudden" wherein he told the jury that if appellant was informed that deceased had been guilty of insulting conduct towards his wife, and such information produced in appellant's mind a "condition of anger, rage, sudden resentment or terror," etc., they could find appellant guilty of no higher offense than manslaughter.

This question was thoroughly and ably discussed by Judge Prendergast and the authorities reviewed in the case of Jaynes v. State, 67 Texas Crim. Rep., 519, 150 S. W. Rep., 441, and it is unnecessary to further do so.

The only other question that need be discussed is the one wherein appellant insists the court erred in sustaining the objection to the question propounded to the witness Duncan, "if it was not a matter of common, current report that deceased was keeping Sarena Durham and Pearl Howard." As the witness had testified that the reputation of deceased for virtue and chastity was good, the court erred in not permitting the question to be propounded. This we stated in the original opinion, and the long list of authorities cited by appellant so holding was unnecessary, as we agreed with his contention; but should this result in a reversal of the case? The question was admissible on the question of reputation of deceased as a chaste and virtuous man, and to test the knowledge and credibility of the witness who had testified that his reputation in that respect was good. But no matter what his reputation in that respect was, it would not authorize appellant to kill him nor reduce the grade of the offense. The matter he relied on to reduce his offense to manslaughter was his claim that his wife had told him deceased had made her improper proposals; his wife so testified she had so told him, and the court instructed the jury that if appellant had been so informed, it would make no difference whether or not deceased was guilty of the insulting conduct. What we held was, that under such circumstances, while it was error to sustain the objection to the question, it was harmless error in this case, for if the witness had so testified it would have but slight or no probative force to prove that deceased had in fact insulted the wife of appellant or she had so told him.

The motion for rehearing is overruled.

*Overruled.*