## M. K. SIMMONS v. THE STATE.

No. 13971. · Delivered April 29, 1931.
Rehearing Denied June 24, 1931.

The opinion states the case.

*W. T. Simmons* and *A. J. Clendenen,* both of Fort Worth, and *Lloyd & Lloyd,* of Alice, for appellant.

*Fred Blundell,* District Attorney, of Lockhart, *J. Lee Dittert,* Assistant District Attorney of Bellville, *J. W. Ragsdale,* of Victoria, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is murder, the punishment being confinement in the penitentiary for fifty years.

This case has been before this court twice already. The opinion upon the first appeal will be found reported in 109 Texas Crim. Rep., 157, 3 S. W. (2d) 449, and the second appeal in 113 Texas Crim. Rep., 53, 19 S. W. (2d) 44. The evidence is set out in sufficient detail in the former opinions. It is admitted that upon the present trial the evidence was substantially the same as that upon the two former trials with the exception that the state offered a couple of witnesses who testified that there had been statements made by deceased of unfriendly feeling towards appellant, and the further additional evidence from a witness by the name of Crow, who had not testified upon either of the former trials. It is concerning him and his testimony that the incidents related and complained of in bills of exception three and four occurred.

S. F. Hunt, who was the sheriff of San Patricio county, was used by appellant as a witness and gave testimony material to the defense. Bill of exception No. 3 reflects that upon cross-examination of Hunt the following testimony was elicited from Hunt: "It is not so that Dave Crow, who was my deputy sheriff at the time of the commission of this homi-

cide, reported to me that he was working on this case, and had been back trailing the back trail from the scene of the homicide to the Coleman Ranch and indicated to me that he had discovered certain things; he did not do that. And I did not then tell him to lay off of it, I did not tell him to lay off of it, that I was working on that case myself, and had all the testimony I wanted. I had no such conversation with him. No such conversation as that took place between me and any human being on earth at any time. There was a conversation between Mr. Crow and me regarding this."

Appellant had made no inquiry of Sheriff Hunt or any other witness regarding the matters mentioned in the foregoing excerpt from Hunt's testimony. There appears to be no merit in appellant's objection to this testimony as it was an inquiry touching the bias or interest of the witness Hunt regarding the case upon trial and apparently was the predicate for the impeachment of the witness regarding a pertinent matter.

The witness Crow had not been used by the state in developing its case in chief. After appellant had rested and after the foregoing predicate had been laid in cross-examination of Sheriff Hunt, the state called Crow to the witness stand who testified in substance that Hunt had telephoned him some time before daylight on the morning after the shooting and requested him to come up and that in response to the telephone call, he went to the scene of the homicide and made some investigation. He related circumstances which, if true, raised an issue that the homicide did not occur at the ranch gate but some distance therefrom on a creek. Crow further testified that when he first saw Sheriff Hunt after making this investigation he undertook to tell him of the discoveries he had made but that Hunt said he had all the evidence he wanted and that Crow could go on home; that he was through. It will be perceived that the testimony of the witness Crow, if true, placed the sheriff before the jury in the light of declining to permit Crow to give him the information which he claimed to have, and was calculated to discount the effect of Hunt's testimony before the jury. In rebuttal appellant called Sheriff Hunt and offered to prove by him his version of the conversation between him and Crow, and upon objection from the state his explanation of the conversation was excluded. If permitted, Sheriff Hunt would have testified that he did not call Crow over the telephone, but that two days after the homicide Crow was in the sheriff's office and that the sheriff asked him to go to the Coleman ranch and talk to Manuel and ascertain from him if the parties present at the time of the homicide were out there at the ranch the night it occurred; that a day or two later Crow came back and told the sheriff that he could not get through the ranch the night before because the gap was up, but that a day or two later he did go to the ranch but did not see Manuel, but that Manuel's wife had said the parties were there the night of the homicide; that Hunt then told Crow

another party had already been down there and ascertained the same fact; that this was the only conversation that he ever had with Crow regarding the matter and that he at no time declined to receive from Crow any information regarding the homicide or his claimed discoveries.

We think the court fell into error in declining to permit Sheriff Hunt to explain his version of the conversation between him and the witness Crow. When asked in regard to the matter, Hunt had denied the conversation as claimed by the state, but admitted that a conversation had occurred; after being placed in the unfortunate light left by Crow's version of the conversation, he should have been permitted to give his own version of it.

In Cain v. State, 68 Texas Crim. Rep., 507, 153 S. W., 147, Reynolds, a state witness, was impeached by a defense witness and over objection from the defendant Reynolds was permitted to explain what had transpired. It was contended by the defendant in that case (as does the state in this) that such explanation could not be made and was improper. This court in passing upon the matter said: "The court did not commit any error in permitting the witness Reynolds to testify as he did," and cites in support thereof Barber v. State, 69 S. W., 515; Turner v. State, 51 S. W., 367, and other cases. Continuing, the court said:

"It would certainly be a harsh rule that would permit either side to ask a witness if he had not made a certain statement to a certain party, when the witness would deny it, and then, when such impeaching witness would state that he had so testified, to refuse to permit the witness sought to be impeached to make a statement of what he did then say, although it was different from what the impeaching witness claimed he did say. It is not only just and fair to the witness that he should be permitted to state what he did say, but certainly the truth of the matter could not be arrived at, unless he was permitted to state what he did say to the impeaching witness."

The same holding of this court will be found in Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W., 743. See also Kemper v. State, 63 Texas Crim. Rep., 1, 138 S. W., 1025.

We are constrained to conclude that the refusal of the trial court to permit the explanation from the sheriff of what was said and what transpired between him and the witness Crow reflects a ruling of the trial court which may have been prejudicial to appellant and which calls for a reversal of the judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The sheriff of any county may well be regarded as one of its chief law enforcement officers, and his testimony, pro or con, is given much weight by juries, and in a sense this is especially true when he appears as a witness to material facts favorable to the defense. There could be no doubt of the weight and importance to this appellant of the defensive testimony of Sheriff Hunt. He was cross-examined by the state while a witness for appellant, and asked about a matter which not only was impeaching to the extent of being a contradiction of a witness, but which also was of such character as to affect his fidelity and integrity as an officer of the law who should know neither friend nor foe in the discharge of his duty,—and the questions asked, if affirmatively answered, would have effectually destroyed the whole testimony of this witness, would have shown him to be an officer who for a friend would suppress search for truth, and who would interpose his authority over subordinates to prevent their disclosure or discovery of facts helpful to the state and hurtful to his friend, the accused. Denying the exact matters laid in the predicate for impeachment, the sheriff admitted one or more conversations with the witness Crow, his deputy at the time of the alleged homicide. When Crow was called to testify in rebuttal by the state, he not only affirmed the matters asked in regard to the conversations said by him to have been had with Mr. Hunt, but testified in detail to most damaging facts not appearing in either of the two records of this case on former appeals. This placed Crow in the attitude not only of impeaching and discrediting Sheriff Hunt, but as furnishing to the state new and most material testimony directly bearing on the question of where and under what circumstances this killing took place. Crow said he knew these facts and undertook to tell them to Mr. Hunt immediately after the homicide,—started to tell them to Hunt, but was told by Hunt that he had all he needed, and for witness to go home.

Appellant offered Mr. Hunt in rebuttal and tried to show by him all that was said between him and Crow, and, as appears, to state what he knew which might shed light on Crow's testimony thus brought before the jury. Mr. Hunt should have been allowed to testify. The gravity of reversals is great, but that of injustice is greater. Mr. Branch succinctly states, upon the authority of many cases cited in section 94 of his Annotated P. C., that the defendant *or any other witness* is entitled to explain any fact tending to create a distrust of his integrity or truthfulness. We think this proposition sound and applicable.

The state's motion for rehearing is overruled.

*Overruled.*