## Roy Floyd v. State

No. 28,388. October 31, 1956.
Appellant's Motion for Rehearing Overruled.
(Without Written Opinion) January 2, 1957.

Chas. A. Keilin, Houston, C. D. Little, Baytown, for appellant.

Dan Walton, District Attorney, Eugene Brady and Thomas D. White, Assistants District Attorney, Houston, and Leon Douglas, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is a violation of Article 95, V.A.P.C., which denounces, among other things, the misapplication by a city officer, or person employed by such officer, of city property which has come into his possession by virtue of his office or employment; the punishment, 4 years.

Because of the unusual complexity of the state's proof (the statement of facts consists of 500 pages) and in the interest of brevity, we have concluded that the issues presented for our

determination may be made clear by outlining the evidence introduced by the state and the appellant without identifying in every case the source of the evidence.

During the time involved in this prosecution the city was acquiring by condemnation within the city limits the right of way for a new state highway.

The appellant was director of the Treasury of the City of Houston and, in his role as such, on November 30, 1954, requested authority from the city council to sell at public auction all buildings located on the proposed right of way and to demolish those that could not be sold. The state established that it was the policy of the city in cases where frame structures were to be demolished that this work should be done by prison farm labor and that the lumber so salvaged should be stored at a central warehouse for issuance to any city department in need thereof. On December 1, such authority was granted the appellant by the city council, and he was directed to report to them what disposition was made of the buildings involved.

During the month of November, the appellant had purchased in his own name a vacant lot in the city of Houston and, according to his testimony, had rented the same to a Mr. Fortenberry, a house mover.

On February 2, 1955, the city acquired by condemnation a six-room duplex which bore the address 2601-2601½ Nance Street. Some two weeks later, the appellant, in his official capacity, addressed a letter "To Whom It May Concern" authorizing Mr. Fortenberry to move the improvements located at a number of different addresses, among them being 2601-2601½ Nance Street, out of the highway right of way. When confronted with a carbon copy of this letter, the appellant stated that he might have dictated the same but did not remember signing or mailing it.

Following this, the appellant reported to the council, pursuant to their previous order, that he had been unable to sell, among others, a three-room dwelling located at 2601 Nance Street and stated that the same was to be demolished by the public works department with prison farm labor. It should be noted that this report was in a measure inaccurate because the property was actually a six-room duplex and bore the street numbers of 2601-2601½ Nance Street. This report was approved by the city council in March, and on March 18 the appellant

reported that he had demolished the buildings mentioned in his earlier report.

Everything progressed smoothly for the appellant until a reporter from the Houston Chronicle evidently discovered the duplex in question properly set up on cement blocks and leveled on the appellant's lot.

Upon being informed of the situation, the mayor terminated the appellant's services with the city. The appellant was questioned in the city attorney's office and made a statement in which he denied that he had authorized Mr. Fortenberry to move any house from the land in question.

According to the appellant's testimony, Mr. Fortenberry approached him on February 9 about buying the duplex located at 2601-2601½ Nance, as well as some other buildings, and the appellant told him that time would not permit him to advertise the same for competitive bidding but that he might have the same for the salvage if he would demolish it and get it off the right of way. Appellant stated that he returned to the area about February 20 and found the duplex gone.

The appellant produced no written evidence supporting his claim that he had rented the property to Fortenberry, and Fortenberry was not called as a witness.

The appellant's defense was that as the time grew short in which the city had to clear the right of way he went to the mayor and reported the dilemma in which he found himself and was instructed to give away, burn or bulldoze those houses which remained on the right of way.

The then-mayor was called in rebuttal and denied having so instructed the appellant. He testified further that he had never given the appellant any specific instructions as to what land to clear first but told him to get that information from a Mr. Nagle and the Texas State Highway Department since the city was depending on the Texas State Highway maps to give them the order of priority.

Fire Chief LaBoue was called in rebuttal by the appellant, and he testified that he had overheard a conversation in which the mayor told the appellant that a certain right of way had to be cleared at any cost and authorized the appellant to give the improvements away as salvage to anyone who would move them.

The state offered evidence that would indicate the property at 2601-2601½ Nance Street was not located in the path of the right of way that was being hurriedly cleared.

The appellant testified that, pursuant to the mayor's instructions, he had given Fortenberry authority to demolish the house in question and that he had not known that it was on his property until the newspaper reporter questioned him about the same.

The state rebutted with evidence that the duplex had been repaired after it had come to rest on the appellant's property.

We shall state the facts more fully in our discussion of the bills of exception which were so ably advanced in brief and argument.

We are met at the outset with a motion to quash the indictment.

In alternate counts, the indictment charged the taking, misapplication, and conversion of a "house" and "lumber." Appellant contends that a "house" cannot be the subject of theft and that the allegation "lumber" is insufficient in that there is no designation as to its quantity. In support of his first contention, reliance is had upon Walles v. State, 136 Texas Cr. Rep. 509, 126 S.W. 2d 989. At first blush, it would appear that the Walles case supports the appellant. This court reversed the conviction in the Walles case because the trial court failed to instruct the jury in his charge "that if the appellant believed in good faith that such house belonged to Leroy McCall at the time he paid him the $12.50 and received the bill of sale, and at the time the house was torn down, then to acquit the appellant." It is authority for that question of law and no more. While it is true that the dictum of the opinion states further that a "house" is not a proper subject of theft, it must be noted that the judgment was reversed and the cause remanded. If this court had decided that the indictment was fatally defective, then the judgment would have been reversed and the prosecution ordered dismissed.

The moment the house was raised from its foundations, it became severed from the realty and assumed the character of personal property and thereby became the subject of theft. Under Article 95, V.A.P.C., the value thereof is immaterial, and we have concluded that the indictment is not subject to this first

attack. The evidence here shows that the house was moved intact from the city's property to that of the appellant, which presents an entirely different state of facts from those before this court in the Walles case.

Our disposition of this first attack upon the indictment obviates the necessity of passing upon the second because the jury returned a general verdict and all of the evidence was admissible under the count charging the misapplication of a house. Vincent v. State, 55 S.W. 819, 21a Texas Digest, Indictment & Information 203.

Another ground alleged for the motion to quash was that the allegations of the indictment were duplicitous in that it charged that the accused did fraudulently *"take, misapply and convert."* Reliance is had upon Ferguson v. State, 80 Texas Cr. Rep. 383, 189 S.W. 271, which held that the words "embezzle," "abstract," and "misapply," when used in the same count of the indictment, charge two or more distinct offenses and rendered the same duplicitous. While the soundness of the Ferguson case might be questioned, it is authority only for the proposition that "the terms 'embezzlement' and 'misapplication' used with reference to the funds of a bank are not convertible terms." Such rule has no application here.

In Beard v. State, 140 Texas Cr. Rep. 127, 143 S.W. 2d 967, which was a prosecution under the same statute as the case at bar, the indictment charged that Beard did "fraudulently take, misapply and convert," and this court held the indictment sufficient, citing a number of cases.

While it is true that the 4th, 5th and 6th Editions of Willson's Criminal Forms omit the word "misapply" in the forms drawn for this offense, we have concluded that the inclusion of such term does not render the indictment duplicitous.

The appellant next contends that the trial court erred in failing to require the state to elect under which count of the indictment it would proceed. The motion to elect alleged that two felonies were charged, the subject of one being a "house" and the subject of the other being "lumber." We have concluded that the record abundantly demonstrates that only one theft or misapplication was involved, and the subject thereof was the "house" situated at 2601-2601½ Nance Street and the lumber of which said house was constructed. "We have held that where the same act or transaction is charged in different counts which

are phrased differently in order to meet possible variations in the proof, the state is not required to elect." Stevens v. State, 157 Texas Cr. Rep. 19, 245 S.W. 2d 499.

If we properly comprehend the appellant's next contention, it is that, even though the state was not required to elect, the trial court erred in accepting a general verdict which assessed a punishment in excess of the minimum.

We have concluded that Judge Lattimore's opinion on re-hearing in McArthur v. State, 132 Texas Cr. Rep. 447, 105 S.W. 2d 227, cleared away the confusion that had existed prior thereto when he said:

"The rule seems well settled that, if but one transaction is involved, and the offense be one which may have been committed in any one of several ways, the pleader may charge in the indictment in one count that such offense had been committed by doing this, and that, and the other, and there will be no duplicity, and need be but a verdict of guilty; or the pleader may set out in separate counts each one of the various ways in which it is claimed the offense might have been committed, in which event also there need be but a verdict of guilty."

In the light of the court's qualification of the formal bills of exception, no error is reflected thereby.

None of the first six informal bills, which present the same questions as the formal bills, shows what the witness, if permitted, would have testified, and therefore nothing is presented for review. Peterson v. State, 157 Texas Cr. Rep. 255, 247 S.W. 2d 110; Singleton v. State, 150 Texas Cr. Rep. 372, 200 S.W. 2d 1015; King v. State, 151 Texas Cr. Rep. 410, 208 S.W. 2d 676; Bell v. State, 162 Texas Cr. Rep. 510, 288 S.W. 2d 87.

The seventh bill complains that the answer of the witness was withdrawn from the jury's consideration by the ruling of the court. It will be discussed. Mr. Harry Holmes, a member of the city council during the times covered by this prosecution, was asked if the mayor had discussed with the council the question of financial aid from the State Highway Department and the chance of their cancelling it. The answer which was withdrawn from the jury's consideration was, "Through the entire term of office we were under the impression that if we could not deliver the highway right-of-way at the time requested by the State Highway Department that that money would go to

Dallas or Fort Worth or somewhere else." The objection was that it was the conclusion of the witness, and we agree with the soundness thereof. No further effort was made to get the witness to answer the question which had been propounded.

Bill of exception No. 44 complains of the ruling of the court on an objection to a question after the same had been answered. No request was made to instruct the jury to disregard the answer, and practically the same question was then asked and answered without objection.

Bill of Exception No. 68 complains that the appellant was limited in his examination of the witness Holmes. The court sustained the state's first two objections to the testimony and then stated, "If he knows he can answer the question," and the witness gave his answers. No error is reflected by the bill.

Bills of Exception Nos. 54 through 59 complain of the introduction of a plat or map prepared by the State Highway Department and a letter of transmittal which tended to refute appellant's contention that there was an urgency about clearing the property located at 2601-2601½ Nance Street.

Appellant's complaint is that, even though it was shown that the appellant had a copy of such map in his office, there was no showing that it had ever been brought to his attention.

While there may have been some question as to the admissibility of the maps at the time they were offered, we have concluded that the testimony which followed rendered the same admissible.

After the maps were introduced, the state called the mayor, and the defense called Chief LaBoue, who testified as hereinbefore set forth. If for no other purpose, the maps became admissible to support the testimony of the mayor and refute that of the fire chief on the issue of whether or not the appellant was given some extraordinary authority because of an emergency to dispose of this property contrary to normal procedure.

Appellant objected to the court's charge because of its failure to define circumstantial evidence. This is the most serious question in the case. We shall summarize the state's case. The appellant was treasurer of the city of Houston and, as such, came into possession of certain houses situated on a right of way which was to be cleared. It became his duty to secure the

city council's authority to dispose of such houses. The council authorized the appellant to sell such buildings as he could and demolish with the use of prison labor those that could not be sold. He reported that the house in question could not be sold and asked permission to demolish it using city forces. This permission was granted. He later reported that it had been demolished, whereas, in truth and in fact, he had given Fortenberry authority to move the house intact, and it was later found on the appellant's property in the process of being renovated.

Appellant first came into possession of this house by virtue of his employment. This was rightful possession, and it did not become wrongful until he asserted a claim hostile to that of the city.

Surely, his claim became hostile when he reported to the city council that he had demolished the house when, in fact, he had given Mr. Fortenberry the authority to move it away intact and it had been removed and placed upon appellant's lot. These facts were established by direct evidence, and because of this proof no charge on circumstantial evidence was required.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

The offense denounced by Art. 95, P.C., is one in the nature of theft and embezzlement in that it makes unlawful the fraudulent taking of the property of another.

The indictment in this case contained multiple counts charging the fraudulent taking by appellant of a house, and the lumber of which it was constructed, which belonged to the city of Houston and which had come into his custody by virtue of his being an officer or employee of an officer of said city.

From those counts, the trial court submitted to the jury, by the following instruction, one offense as one transaction:

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Roy Floyd, on or about the 14th day of February, A.D. 1955, in the County of Harris and State of

Texas was an officer, or was employed by an officer, of the city of Houston, Texas, a municipal corporation, to-wit, Director of the Treasury of said city, and that there had come into and was then and there in defendant's custody or possession by virtue of his office or employment a house located at 2601-2601½ Nance Street in the city of Houston, and the lumber of which said house was constructed, and that said house or lumber was personal property of value belonging to such city, and the said Roy Floyd did then and there fraudulently take, misapply or convert the same to his own use, you will find the defendant guilty and assess his punishment at confinement in the State penitentiary for any term not less than two years nor more than ten years, as you shall determine and say by your verdict."

Under that instruction to the jury, they returned a general verdict finding appellant guilty, as charged.

Judgment was entered in accordance with that verdict and sentence thereon was duly passed finding appellant guilty of fraudulently taking and converting personal property belonging to the city of Houston.

In the light of such facts it is apparent that the alleged fraudulent taking—that is, theft—of the house and lumber of which it was constructed was one indivisible transaction, and the trial court so construed and so treated it in his charge and the jury so found by their verdict.

It is apparent, therefore, that appellant stands here convicted of the fraudulent taking of the house and lumber of which it was constructed, for if he stole the house he stole the lumber of which the house was constructed, and, conversely, if he stole the lumber of which the house was constructed he stole the house.

By motion to quash the indictment, and by other means, appellant insisted in the trial that a house is not the subject of theft or fraudulent acquisition, because it is not and cannot be corporal personal property and is therefore incapable of being fraudulently taken and converted, as such, to the use and benefit of another.

To my mind, a house cannot be the subject of theft in this state. Speaking through Judge Graves in the case of Walles v. State, 136 Texas Cr. R. 509, 126 S.W. 2d 989, this court definitely and clearly so decided, when it said:

"We also find ourselves at a loss to understand how any person can be guilty of the theft of a 'house' as is charged in this indictment. Theft is the fraudulent taking of any corporeal *personal* property. A house is a part of the realty and not personal property."

Notwithstanding such direct and positive language as also the correct legal conclusion announced thereby, my brethren refuse to follow that holding or accept such as a correct proposition of law. Just why the majority of the court refuse to follow that pronouncement I am unable to ascertain from their opinion. The only conclusion appears to be that they reject it as being incorrect, for if they entertained any other view they could not have affirmed the conviction under this record.

The correctness of the holding in the Walles case cannot, in my opinion, be doubted. The following supports me in such opinion:

In 1889, the legislature passed what became Art. 791 of the Penal Code of 1895, by which it was made unlawful for any person to wilfully or mischievously injure or destroy any real or personal property of another in such manner as that the injury did not come within any of the offenses otherwise specified by the Penal Code.

Under that statute, a conviction for tearing down and removing a house from the property of another was sustained by the Texas Supreme Court when that court had appellate jurisdiction of criminal cases, Ritter v. State, 33 Texas, 608.

The provisions of said Art. 791, P.C., of 1895, have been brought forward and are now incorporated in Sec. (1) of Art. 1350, Vernon's Penal Code, by which it is made unlawful for one to wilfully injure or destroy any property belonging to another, of any kind whatsoever, without the consent of the owner.

Where the property injured or destroyed exceeds $50 in value the punishment therefor is fixed at not less than two nor more than twenty years, this being a heavier punishment than that fixed for theft of personal property over the value of $50.

The legislative history of Art. 1350, Vernon's P.C., shows that when the legislature amended Art. 791, P.C., of 1895,

provision was made to expressly include the injury or destruction of real property. That provision appeared as Art. 1235, P.C., of 1911, which statute was amended by the present Art. 1350, Vernon's P.C.

By Sec. (2) of Art. 1350, Vernon's P.C., the legislature was very careful to except from its provisions the wilful injury or destruction by certain means—such as arson—of certain types of property—such as growing timber and fences—covered by special statutes.

From this legislative history, as well as from the language of Art. 1350, Vernon's P.C., it is to my mind clear that the legislature not only intended to but did make it unlawful for one to wilfully tear down or remove a house belonging to another without the consent of the owner, where the value of the house so removed or destroyed was over the value of $50, and the punishment fixed was greater than that affixed to the crime of felony theft.

Other statutes of our penal code demonstrate the correctness of the holding in the Walles case, supra, that a house cannot be the subject of theft.

I call attention to the timber-cutting statute (Art. 1379, P.C.) where it is made unlawful for one to cut down or destroy merchantable timber from the land of another. So, the statutes, Art. 1384 and 1383, P.C., make it unlawful to cut down or otherwise destroy any walnut or pecan tree on the land of another—all of which demonstrates that property attached to the soil cannot be subject to theft.

A house, defined by Art. 1395, P.C., is as follows:

"A 'house' within the meaning of this chapter, is any building or structure erected for public or private use, whether the property of the United States, or this State, or of any public or private corporation or association, or of any individual, and of whatever material it may be constructed."

Under that statute, this court has consistently held that a house, to be such, must be attached to the soil. It has been held that the following do not constitute a house: a railroad car (Summers v. State, 49 Texas Cr. Rep. 90, 90 S.W. 310), a showcase in the vestibule of a store (Clark v. State, 56 Texas Cr.

Rep. 494, 120 S.W. 2d 892), a portable oil rig doghouse not attached to the realty but movable from place to place (Loftis v. State, 157 Texas Cr. Rep. 569, 251 S.W. 2d 411), and a portable box used for storing dynamite (Stoddard v. State, 120 Texas Cr. Rep. 55, 47 S.W. 2d 281).

In view of the holding above mentioned, the legislature, by Arts. 1403 and 1404, P.C., made it unlawful to burglarize a railroad car. So also did the legislature, by Art. 1404b, Sec. 2, Vernon's P.C., make it unlawful to burglarize a vehicle, which is defined to be "a device, in, upon or by which any person or property is or may be propelled, moved or drawn upon a highway, except a device moved by human power or used exclusively upon stationary rails or tracks."

Such definition includes automobiles, motor carriers, and trailers of whatsoever kind or character.

The 1951 draft of Art. 1404b, V.A.P.C. (Chap. 273, p. 447, Acts 52nd Legislature) made it unlawful for one to break and enter a vehicle with the intent to commit a felony or a misdemeanor. The emergency clause to the act sets out the reason for the passage of the act as emergency legislation as being that the law then existing did "not adequately protect vehicles against breaking and entering."

Such constitutes a direct finding by the legislature that a motor vehicle or trailer was not and could not be a house, for if it were a house the burglary statute would amply protect against burglary thereof; also it constitutes a finding that a house exists, as such, only when attached to the realty.

In 1955, the legislature, by Chap. 71, p. 351, Acts Regular Session of the 54th Legislature, reenacted Art. 1404b, V.A.P.C., with one change therein—which was a change in the purpose and intent with which the breaking was done—to read "with the intent of committing a felony or the crime of theft" rather than "for the purpose of committing a felony or misdemeanor," as in the 1951 act.

In its emergency clause, the 1955 act reiterated the fact that the existing laws did not adequately protect against breaking and entering a vehicle.

The statutes discussed firmly establish, in my opinion, the correctness of the holding in the Walles case, supra, that a

house cannot be and the legislature has not intended that it be the subject of theft or fraudulent taking.

I am convinced that the appellant's motion to quash the indictment, as well as his motion for an instructed verdict, should have been sustained.

In addition to the foregoing, I express my serious doubt as to whether real estate belonging to the city of Houston can come into the custody or possession of an officer or employee of an officer of that city and be converted by the officer or employee to his own use, as is necessary to constitute a violation of Art. 95, P.C.

When one converts to his own use the property of another he has deprived the owner thereof of that property.

Unless that conversion can be accomplished, there can be no offense, especially under the embezzlement statute or Art. 95, P.C., where conversion is necessary to be shown in order to constitute such offense—all of which demonstrates, in my opinion, the wisdom of the legislature in punishing one for the wilful destruction of or injury to the real estate of another. Art. 1350, V.A.P.C.

I do not agree that this conviction may be sustained on the ground that, after the house had been severed from the soil, appellant converted to his own use the lumber of which the house was constructed.

In the first instance, the trial court did not submit the case to the jury upon that theory, and therefore the jury's verdict cannot be construed as finding appellant guilty of an offense not submitted to them. Secondly, the indictment did not warrant the submission of the case upon that theory. Thirdly—and this, to my mind, is the most conclusive—the house or lumber of which it was constructed did not come into appellant's possession, after it had been separated from the soil, by reason of his being an officer or employee of an officer of the city of Houston. His possession thereof was the result of a violation by him of Art. 1350, V.A.P.C. The lumber of which the house was constructed was therefore never lawfully in his possession, as an officer or employee of an officer of that city.

I respectfully dissent to the affirmance of this case.