**T. M. McCLURE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41131.**

Court of Criminal Appeals of Texas.

April 3, 1968.

Rehearing Denied May 15, 1968.

Second Rehearing Denied July 17, 1968.

Haynes & Fullenweider, by Richard Haynes, Sanford Radinsky, Houston, for appellant.

Oscar B. McInnis, Dist. Atty., Edinburg, R. L. (Bob) Lattimore, former Dist. Atty. and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

WOODLEY, Presiding Judge.

The offense is murder without malice; the punishment, 5 years.

The indictment alleged the murder of Mrs. T. M. McClure with malice aforethought on or about September 22, 1965. The state gave notice that the death penalty would be sought.

Appellant pleaded not guilty. He did not testify or offer any testimony before the jury.

The state relied upon circumstantial evidence.

Appellant's first ground of error is that the evidence is insufficient to sustain the conviction.

Viewed in the light most favorable to the jury's verdict, the evidence reflects the following.

On September 23, 1965, about 1:30 P. M., the nude body of appellant's wife, Gilda, was found floating in Delta Lake some 15 miles north of her home in Weslaco which she occupied with appellant, his daughter Rebecca and her son Billy Glynn Hall, and in which appellant practiced his profession as a Chiropractor.

The body was taken to a funeral home in Edinburg where it was identified by appellant and an autopsy was performed. The cause of death was established as asphyxiation by strangulation by external pressure on the neck consistent with pressure ex-

i

erted by a human hand placed on the throat, and not from drowning.

The Pathologist estimated the time of death as between 2:00 P.M. and 6:00 P.M. on September 22, 1965.

A diagonal laceration under the lateral margin of the right eyebrow "clear to the bone" and an abrasion of the lateral area of the right forehead were found to be post mortem wounds. The blood oozing from the area was due to gravity flow and there was no swelling around the eye.

Rebecca McClure, appellant's 18 year old daughter by a previous marriage, before leaving school on the afternoon of September 22, 1965, called by telephone and asked her father if they could go out to eat that night. Her stepmother Gilda (the deceased), who had answered the telephone and called her husband (appellant), apparently from the extension telephone in the house, then said: "You little son-of-a-bitch, you don't mean for all of us to go out to eat. You just want you and your dad to go out and eat and have a good time."

Rebecca then heard her father (appellant) say: "She shouldn't be talking like that," and heard her stepmother (the deceased) say: "Oh, go to Hell."

About 5:00 or 5:15 P.M. appellant called Rebecca and told her he would pick her up and go eat. About 5:30 P.M. appellant and 6 year old Billy Glynn came to Rebecca's friend's house for her in the family car. When Rebecca asked where Gilda (the deceased) was, appellant replied that she didn't come.

Rebecca testified that they left the cafe about 6:30 and she returned to her friend's house. She got home about 9 P.M. and got ready for bed about 10 P.M. During this time she saw appellant and Billy but did not see Gilda (the deceased), or Gilda's mother who also lived with them.

Billy saw his mother before he went out to eat with appellant and Rebecca. This was on one of several occasions when he came into the house from play and was told by appellant to get out. He saw only her feet as she was lying on the floor. She did not say anything or move. He did not see her alive after that.

According to the 6 year old Billy, that night after they returned from eating with Rebecca and he and appellant had watched television, appellant told him that his mother had been killed. After he had gone to bed he heard money rattling at his mother's closet and thought it was appellant rattling money that was in his mother's purse.

Rebecca noticed the next morning that the family car was missing.

Weslaco Police Officer Doyle Pemelton received a call on September 23, 1965, to go to appellant's house as he wanted to talk to a police officer. Upon arrival, appellant reported that his wife and his 1963 Chevrolet were missing.

About 1:45 P.M. the officer located the autombile parked five or six blocks from appellant's home, the windows closed, the doors locked. The keys were in the ignition and the car was clean.

When appellant got to the car he got his keys out of his pocket and opened the car door, and after remarking that someone had "driven two quarters of a tank of gasoline out of his car," he drove it away.

When appellant came to the Funeral Home to view the body "he showed little emotion, and said 'That is my wife, and how did she get there,' and that he last saw his wife around 6 or 6:30 on the night before, at which time she was dressed in a pink dress."

Later, a torn pink dress and a handbag were found in the Delta Lake and were identified by appellant as belonging to his wife (the deceased).

Evidence introduced relating to the previous relationship existing between appel-

lant and the deceased includes testimony of appellant's daughter, Rebecca, that there was jealousy between them and they "fussed a lot"; testimony of Justice of the Peace Carlos Guerra that on May 17, 1965, they were in his courtroom and appellant said: "She knows what she is and she is a whore"; testimony of Officer Pemelton relating to a call to appellant's home to investigate a burglary three or four years previously, at which time appellant was accusing his wife of having men hidden in the attic and demonstrated how a man could climb a 35 or 40 foot mesquite tree by the house and swing over to a window ledge, and his wife said that the reason they had to leave Raymondville was because he kept accusing her of running around with other men; and the testimony of Willacy County Attorney Edna Cisneros Carroll that in 1962 appellant and his wife were in her office in Raymondville at which time she told appellant that his wife Gilda had said that he had threatened to kill her and that he choked her into unconsciousness, and:

"A. He started saying that she was unfaithful and that he had found evidence of her having relations, that he had found towels and wash rags and diapers in the back yard showing that she had been unfaithful to him and that when they had first gotten married that they had agreed that they would always be together and that this is why he couldn't trust her.

"Q. Now, then, did she say anything in answer to that?

"A. Yes. She said that he knew that wasn't true and that the agreement that they had was that they always would be together, but that meant on trips and things of that nature and not on trips to the grocery store and that she couldn't even go to a neighbor's house to look at a pattern because he would drive over there to check and see if she was there. She was tired and couldn't go on living like that."

And on cross-examination she testified:

"Q. Now, did you not at that time, Mrs. *Cisneros*, hear Dr. McClure claim that he had caught Gilda McClure in an act of infidelity in the back yard at his home in Raymondville?

"A. Yes.

"Q. You were there? And, as you testified, he told you that he found evidence of her infidelity in the back yard?

"A. Yes.

\*   \*   \*   \*   \*   \*

"Q. And, you told him that according to her, some three or four weeks before, or two or three weeks before that, he had, according to her, threatened to kill her?

"A. I believe so.

"Q. Two or three weeks?

"A. I believe so.

"Q. All right. And of course, Gilda McClure, according to what you remember about it, denied her infidelity?

"A. Yes."

▆ We find the evidence sufficient to sustain the jury's verdict.

Appellant's second ground of error is:

"The court erred in permitting the State to prove by Edna Cisneros Carroll that Deceased, three years prior to her death, stated that Defendant had threatened her and choked her into unconsciousness."

As pointed out above, the testimony of Mrs. Carroll related to a conference in her office when appellant and his wife were present, and included what she told appellant and some of the statements made by appellant and his wife, neither of whom was in custody or under restraint.

▆ The ground of error is overruled.

The remaining ground of error is:

"The trial court erred in failing to declare a mistrial as a result of the prejudicial conduct of the District Attorney during the testimony of the State's Witness Rebecca McClure."

Appellant's daughter Rebecca was called as a state's witness. Her testimony has been briefly discussed above.

On her re-direct examination, the District Attorney asked her: "Is Mr. Haynes (defense counsel) your attorney?" This brought quick response in the form of objection and motion for mistrial on the ground that·it was highly prejudicial and improper on the part of counsel.

The motion for mistrial was overruled and, after an exchange between counsel which led the court to ask that they talk one at a time, and to sustain objection of defense counsel "to arguing with the court about a ruling, in the presence of the jury, as being prejudicial and inflammatory," the following occurred:

"MR. LATTIMORE (District Attorney): Do I understand that I can't find out whether she is represented by this man, or not?

"MR. HAYNES (Defense Counsel): May it please the Court, if he wants to get into it, we will withdraw that objection and he is opening the flood-gates.

"Q. Is this man your Attorney, Miss Rebecca? For I want to know.

"A. Yes, sir.

"Q. All right. You didn't talk to me because he wouldn't let you, isn't that right?

"A. I was advised that I didn't have to.

"Q. He said, you didn't have to. All right. And, then, finally in his presence, you did talk to me about this case?

"A. Yes, sir.

"Q. Now, I never talked to you but one time about it, have I?

"A. That is right.

"Q. And, we went into a very short session about the matter at that time? You don't have any reason to hire an attorney, do you, in this case?

"MR. HAYNES: Now, Your Honor, as Miss McClure's lawyer, I instruct her that she does not have to answer that question.

"MR. LATTIMORE: Well, it finally came out all right. Finally came out. No further questions."

■ No objection was offered to the above quoted questions or answers or remarks of the District Attorney.

Ground of error No. 3 is overruled.

The judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

Appellant's counsel takes this Court to task because of the dearth of authority cited in our original opinion and because we failed to discuss the cases cited by him in his original brief. It is true that Davis v. State, 118 Tex.Cr.R. 410, 40 S.W.2d 809, and Simmons v. State, 118 Tex.Cr.R. 519, 40 S.W.2d 804, are authority for the rule that reversible error is reflected when a witness is not permitted to explain a fact which has been brought out to discredit him. In our original opinion we set out in haec verba the testimony of Rebecca McClure upon which appellant relies, and we were then and are now unable to find anything discrediting to the witness nor do we find that the defendant ever perfected his bill of exception by showing what further testimony he sought to elicit from such witness. Gaskins v. State, 164 Tex. Cr.R. 431, 299 S.W.2d 710, 711; Floyd v. State, 164 Tex.Cr.R. 50, 296 S.W.2d 523; Peterson v. State, 157 Tex.Cr.R. 255, 247 S.

W.2d 110; and Davis v. State, 73 Tex.Cr.R. 49, 163 S.W. 442.

He further complains of the testimony of the County and District Attorney also set forth in our prior opinion and contends that the same was hearsay. We were careful to point out that all three parties were present and the court carefully instructed the witness to confine her testimony as to what transpired in appellant's presence. There was no showing that an accusation was made against appellant and that he remained silent, as was the situation in a number of cases cited by appellant, such as in Brown v. State, 172 Tex.Cr.R. 229, 355 S.W.2d 718; Covin v. State, 130 Tex.Cr.R. 285, 93 S.W.2d 428; and Sessums v. State, 129 Tex.Cr.R. 128, 83 S.W. 2d 965.

Remaining convinced that this cause was properly disposed of originally, appellant's motion for rehearing is overruled.