311 So.2d 242 (1975)
STATE of Louisiana, Appellee.
v.
James A. BULLOCK, Appellant.
No. 55640.
Supreme Court of Louisiana.
March 31, 1975.
Rehearing Denied April 25, 1975.
*243 Joseph Neves Marcal, III, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.
TATE, Justice.
By the defendant's appeal, he principally contends: (1) the prosecution should be dismissed as untimely; (2) his sentence *244 was improperly enhanced under the multiple-offender law; and (3) he should have been given credit for time served prior to sentence.
The defendant was charged with murder. La.R.S. 14:30. The jury convicted him of manslaughter, La.R.S. 14:31, a lesser verdict responsive to the murder charge. La.C.Cr.P. art. 814.
The maximum sentence for manslaughter is twenty-one years. La.R.S. 14:31. However, because the defendant had been convicted by a court martial in 1945 while serving as a soldier during World War II, he was after conviction billed as a second offender and, as a second offender, sentenced to twice the maximum, or forty-two years, under our multiple-offender law. La.R.S. 15:529 (1958). The trial court also denied credit for a substantial portion of time spent in custody prior to sentence. Cf., La.C.Cr.P. art. 880.
Context Facts
The homicide occurred in 1966. The defendant Bullock was tried in 1966, within nine months after the offense. He was found guilty and sentenced to death.
The death penalty was set aside in 1971, due to a constitutional deficiency in the trial jury, and a new trial was ordered. The new trial was not actually commenced until June 4, 1974, some three years and two months after the new trial was ordered.
Seven months' delay in 1972 was occasioned by the trial judge's sua sponte annulment of the previous order for a new trial, which this court reversed. 263 La. 946, 269 So.2d 824 (1972). Another three months' delay was occasioned in 1974, when on the remand the trial court once again annulled the order for a new trial and was once again reversed by this court. 294 So.2d 218 (La.1974).
1. Denial of a Speedy Trial
In large part based upon these incorrect actions of the trial court, Bullock contends that he was denied his constitutional right to a speedy trial and that, in the alternative, the prosecution against him had prescribed.
An accused unconstitutionally deprived of a speedy trial is entitled to dismissal of the prosecution. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). In determining whether this constitutional right has been violated, no fixed-time period is determinative; rather, the conduct of both the prosecution and the defense are weighed in the light of several factors: the length of the delay; the reason for the delay; the defendant's assertion of his right; and the actual prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Harris, 297 So.2d 431 (La.1974).
In the present instance, the defendant was initially tried and convicted in 1966, within nine months of the offense. There is no complaint that, for that first trial, he did not have full opportunity to prepare his defense and to have available all witnesses desired for his defense. Nor is there any showing that, for the re-trial in 1974, he was deprived of the availability of any witness by the passage of time. In short, no actual prejudice is shown by the delay in re-trial, principally because of the prompt and adequate initial trial.
The primary reason for the initial long delay in re-trial following the first conviction is due to the uncertainty at the time as to the constitutionality of the death penalty provided by statutes similar to that under which the defendant was prosecuted. The issue was not ultimately resolved until 1972. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).[1] *245 We are unable to say that the defendant's own counsel's delay in securing a re-trial until 1971, and in urging re-trial before Furman, had the effect of denying the defendant a speedy trial. The delay was to his benefit, in the light of the uncertainty of the law at the time and of the circumstance that the awaited clarification was to avoid application of the death penalty to him.
Likewise, except for the ten months' delay occasioned by the erroneous rulings of the trial court, most of the subsequent delay resulted from changes of counsel for the defendant, and by defense motions in aid of preparation for re-trial.
Within a year of the remand for the retrial by this court in 1972, the defendant filed numerous motions in September 1973, which were denied on October 11, 1973 and on November 6, 1973. The defendant did not file a motion for a speedy trial until January 29, 1974. The re-trial was actually commenced on June 4, 1974, four months after the latter motion.
In summary, the delay in re-trial from 1971, when it was ordered, until the 1974 trial date is mostly explainable by efforts to enable him to avoid the death penalty or to prepare his defense. Bullock is charged with killing a policeman, and he was initially convicted of murder. On the retrial, he was convicted of the lesser offense of manslaughter. No actual prejudice in the preparation for his second trial is shown.
The prosecutor did not oppose his effort to secure an immediate trial, when asserted. Most important, the accused was in fact afforded a speedy and adequate trial soon after the offense. In the absence of any actual prejudice, we are loath to hold that the accused was denied his constitutional right to a speedy trial because of the not-unreasonable delays consequent to affording him post-conviction relief from his timely but unconstitutional initial conviction.
Prescription: The defendant alternatively contends that the prescription barred prosecution when it was not commenced within the three years after a new trial was ordered. See La.C.Cr.P. arts. 578, 582. However, the defendant filed numerous preliminary pleas which suspended the running of prescription until ruled upon, with the State being afforded minimum period of one year after a ruling to commence the trial, La.C.Cr.P. art. 580. The new trial commenced on June 4, 1974, well within a year of the last ruling of November 6, 1973 on one of the defense motions. The plea of prescription was correctly overruled.
2. Enhanced Penalty as a Multiple Offender
After the conviction on the lesser responsive verdict, the State for the first time asserted that the defendant was a multiple offender. By bill filed after the verdict, the State asserts that in 1945 the defendant had been convicted by a court-martial, while a soldier during World War II, of a crime (murder) which would be a felony under the laws of Louisiana. Consequently, as a second offender, the trial court sentenced the accused to twice the longest term (21 years) to which he was subject for a first conviction for manslaughter. La.R.S. 15:529.1 (1958).
A certified copy of the federal prison records was filed in the proceedings as proof of the first conviction. This offering, and the testimony of a police officer identifying the fingerprints as the defendant's, is the sole proof of the court-martial conviction.
The certification so offered does not meet the statutory requirements set forth by La.R.S. 15:529.1, subd. F to subject a defendant to punishment as a *246 multiple-offender. It does not, specifically, set forth the "length of time imprisoned, and the date of discharge from prison or penitentiary." This requirement is apparently designed to permit the sentencing court to make the essential determination that "more than five years have elapsed since expiration of the maximum sentence", La.R.S. 15:529.1, subd. C. Cf., State v. Broussard, 213 La. 338, 34 So.2d 883 (1948).
We hold, therefore, that the 1945 court-martial conviction cannot be used as a prior conviction to enhance the penalty for the defendant's 1974 conviction of manslaughter in the present case.
3. Credit for Time Served
The defendant was sentenced in 1974.
La.C.Cr.P. art. 880, as amended in 1970, mandatorily provides that the sentencing court "shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of [his] sentence." (Italics ours.) The defendant is entitled to credit for the time spent in custody between 1966 and his sentence in 1974.
In refusing to allow the defendant credit for time served between 1966 and 1970, the trial court reasoned that the 1970 amendment was not retroactive. State v. Williams, 262 La. 769, 264 So.2d 638 (1972). Williams simply held that the statute did not apply to sentences imposed and executory before the date of the 1970 amendment. It did not purport, in the face of the clear amendment's express provision to the contrary, to prevent the application of the amendment to any sentence imposed after its effective date. The trial court was in error in holding otherwise.
Decree
For the foregoing reasons, the conviction is affirmed, but the sentence is annulled. The case is remanded to the trial court, with instructions to it to re-sentence the defendant and to allow him credit for all time spent in actual custody prior to the imposition of sentence.
Conviction affirmed; case remanded for sentencing in accordance with law.
SUMMERS, J., dissents and assigns reasons.
BARHAM, J., concurs, being doubtful of the disposition of defendant's claim of denial of speedy trial.
SUMMERS, Justice (dissenting).
The prior offense upon which the State relied in charging Bullock as a double offender, under Section 529.1 of Title 15 of the Revised Statutes, was a conviction by a United States General Court-Martial in September 1945. The conviction was for the murder of an Italian woman at Torretta Army Air Field, Italy, on July 17, 1945. In order to prove the former crime, the State relied on S-1, a group of documents obtained from the United States Department of Justice attesting to the fact that James A. Bullock had been convicted of the former killing and sentenced to life imprisonment.
Bill 6 was reserved when the trial court overruled defense counsel's objection to the introduction into evidence of S-1 during the double bill hearing, the basis of counsel's objection being that the documents were "without identification by the certifying authority."
Similarly, bill 7 objects to the introduction into evidence of S-2, Bullock's fingerprints.
In my opinion the contentions raised by these bills are adequately and properly answered by the per curiam of the trial judge, which reads:
"The defense objected to an `In Globo S-1' exhibit on the basis that the documents should be identified by the certifying *247 authority. This court overruled the objection.
"The document in question bears the seal and signature of William B. Saxbe, Attorney General of the United States. Furthermore, it is certified by Norman A. Carlson, Director, Bureau of Prisons, Federal Bureau of Prisons, U.S. Department of Justice. It is also certified that Norman A. Carlson is the duly qualified custodian of such records. L.R.S. 15:457, entitled Force of Certified Documents As Evidence; Unauthorized Certificates, provides that: `A copy of a document, certified by the officer who is the legal custodian of the same is equivalent to the original in authenticity.' Moreover, R.S. 15:456 provides for proof of genuineness, viz: `Every authentic act, unless shown to be a forgery, makes full proof of its own execution. . . .' Due to the fact that the documents have been sufficiently certified and identified in accordance with the cited statutes, the bills of exceptions have no merit."
Appellant's entire argument on these bills is quoted as follows: "The trial court erred in allowing exhibits, to the prejudice of the defendant, which were not properly identified or presented by their certifying authority. The above Bills of Exception (6 & 7) are submitted upon the record and transcript."
The certified record in referring to the enclosures plainly sets forth: "A General Court-Martial, Orders Number 160, dated September 11, 1945, which sentences Mr. Bullock to be confined at hard labor for a life term, . . . ." On another document, his sentence is shown to be for a "term of his natural life." Finally, the transcript of his court-martial shows the sentence was adjudged on 17 August 1945 and was for the "term of his natural life." I further find in this record a stamp which I understand to be a record of the date of Bullock's discharge from the U.S. Penitentiary at Leavenworth, Kansas, dated November 15, 1962.
In addition to the fact that the bills of exceptions do not raise the issue upon which the Court relies to overturn this enhanced penalty, in my view the statute (La.R.S. 15:529.1, subd. F) does not make "the length of time imprisoned, and date of discharge from prison or penitentiary" an indispensable part of the evidence required to impose an enhanced penalty. As the statute makes clear, the information if properly certified "shall be prima facie evidence" of the facts contained in the certificate. Because certain certified documents are declared to be prima facie evidence of a fact does not mean that other evidence may not be used to establish the fact. Nor is the evidence lacking in this record that the requirement that "more than five years have elapsed since expiration of the maximum sentence" was not satisfied. To the contrary, it is self-evident from the record that this charge was filed in 1966 for an offense committed that same year, and the evidence, in my view, establishes that Bullock was still in the Federal prison in 1962. Therefore, five years had not elapsed after his discharge from the federal penitentiary. All of this is evident from the record before us.
I respectfully dissent.

On Application for Rehearing
PER CURIAM.
We do not intend to foreclose the state from proceeding against defendant under the Habitual Offender Law subject to any defenses available to defendant. We simply hold the present sentence to be invalid as not complying with the requirements of R.S. 15:529.1, subd. F.
The application for rehearing is denied.
SUMMERS, J., dissents being of the opinion a rehearing should be granted.
NOTES
[1] The defendant's re-trial was ordered in 1971, by virtue of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), a Furman precursor which invalidated convictions where prospective jurors were excused because of only general scruples against capital punishment. However, at the time the state desired to re-try him to secure the death penalty. See State v. Bullock, 263 La. 946, 269 So.2d 824 (1972).