337 So.2d 1191 (1976)
STATE of Louisiana ex rel. Buford MILLER
v.
John O. CRAFT, Sheriff of Vernon Parish, Louisiana.
No. 58090.
Supreme Court of Louisiana.
October 6, 1976.
*1192 Roy B. Tuck, Jr., Leesville, for plaintiff-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., T. R. Broyles, First Asst. Dist. Atty., for defendant-respondent.
MARCUS, Justice.
On April 8, 1976, Buford Miller filed an application for a writ of habeas corpus in the Thirtieth Judicial District Court alleging that he had been confined in jail for approximately two years in violation of his constitutional rights to a speedy trial, to assistance of counsel, and to due process of law. The district judge granted a writ directed to the sheriff of Vernon Parish and fixed a date for an evidentiary hearing. The sheriff did not appear at the hearing. The district attorney appeared briefly but claimed that the state was not a party to the proceeding. After hearing evidence adduced by defendant, the trial judge took the matter under advisement and subsequently refused to discharge defendant from custody on the ground that he might be dangerous to himself or others and might not be capable of caring for his person. We granted certiorari to review the correctness of this ruling.
The record reveals that warrants of arrest for Buford Miller were issued on April 30, 1974 for resisting arrest and on May 2, 1974 for attempted aggravated burglary. Bail was fixed at $1,000 and $25,000, respectively, for the alleged offenses. On motion of the district attorney, an order was signed by the district judge on May 7, 1974 transferring defendant to the East Louisiana State Hospital at Jackson for the purpose of determining his present mental capacity to stand trial. The order was not directed to any physician in particular and called for a report to be submitted to the court in ninety days.[1] Both the testimony of defendant and the record of the proceedings demonstrate that, in fact, defendant was never transferred to East Louisiana State Hospital, that he was never examined, and that no report was ever filed.[2] Instead, defendant remained incarcerated in the custody of the Vernon Parish sheriff[3] without ever having been appointed counsel and without having been charged with a crime. Defendant testified that during this time he complained orally to the deputy in whose custody he was confined about being held *1193 for such a long period of time without trial. Finally, over one and one-half years after the date of his arrest, a fellow prisoner prepared for defendant's signature a letter addressed to a federal district court judge complaining of his lengthy imprisonment without benefit of counsel and without having been charged or tried for any offense.
On February 24, 1976, the district attorney notified Mr. John Ford, an attorney from Leesville, Louisiana, that the defendant would be arraigned on February 27, 1976. Mr. Ford testified that on receipt of this letter he examined the record in defendant's case with the assistance of the minute clerk for the district court and could find no evidence that he had ever been appointed to represent defendant in any matter. He further testified that he did not know Miller and had never interviewed him as a client. On February 27, 1976, the district attorney for the first time filed a bill of information charging defendant with aggravated burglary. That same day, an associate of Mr. Ford represented defendant in court; defendant waived arraignment and entered a plea of "not guilty." Trial was set for March 29, 1976. When the case was called for trial, the court's attention was directed to the fact that the question of defendant's mental capacity to stand trial had never been disposed of; whereupon, the trial judge again ordered that defendant be examined. The results of this examination were filed with the court on March 30, 1976. At that time, the state moved to withdraw its motion for an investigation into defendant's mental incapacity to proceed made in May of 1974. Defendant objected and requested that he be examined by a licensed psychiatrist. Without ruling on these motions, the court ordered that defendant be taken to Byrd Memorial Hospital for an examination and that a report be filed the next day regarding defendant's mental capacity to proceed. The court further ruled that it would rely on the written reports of the doctors and refused to subpoena the doctors as requested by defendant. The first examination, conducted by the coroner, Dr. S. J. Jones, resulted in a report that defendant was capable of standing trial but was probably retarded. The second report made by Dr. Edwin H. Byrd of the Byrd Memorial Hospital, revealed that Miller was disoriented and confused about his imprisonment and recommended that he be sent to a state institution for a full psychiatric work-up. Based on these written reports, the trial judge ruled, on March 31, 1976, that defendant was presently unable to stand trial. He also relieved Mr. Ford of his representation of defendant and appointed Roy B. Tuck, Jr. as defendant's new counsel. As aforesaid, Mr. Tuck filed an application for a writ of habeas corpus on behalf of defendant on April 8, 1976 and presently represents defendant before this court.
Defendant contends the trial judge erred in his ruling in three respects: (1) in failing to find that he had been denied his constitutional right to a speedy trial; (2) in declining to rule that he had been denied his constitutional right to assistance of counsel; and (3) in relying upon medical reports in refusing his discharge from custody. Because we find merit in defendant's contention that he has been denied a speedy trial, we do not reach the other arguments urged before this court.
The right to a speedy trial is a fundamental right guaranteed by both the federal and state constitutions. We have recognized that this right attaches when the defendant becomes an accused, which, in this case, occurred on the date of his arrest. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Stetson, 317 So.2d 172 (La.1975). In determining whether this constitutional right has been violated, no fixed time period governs; rather, the conduct of both the prosecution and the defense are weighed in the light of several factors: the length of the delay; the reason for the delay; the defendant's assertion of his right; and the actual prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Bullock, 311 So.2d 242 (La.1975).
In our consideration of the first factor to be assessed, the length of the delay, *1194 we note that there is no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. Barker v. Wingo, supra. The record in this case reveals that on March 29, 1976, the date finally fixed for defendant's trial, Buford Miller had been incarcerated for at least twenty-two months. While such a delay might not have been excessive under other circumstances, we find that the incarceration of defendant, an indigent, with bail fixed at an amount that he could not meet, without being afforded assistance of counsel,[4] and without having been formally charged with an offense until February 27, 1976, requires an inquiry into the other factors.
The second factor to be weighed in determining whether defendant's right to a speedy trial has been denied is the reason for the delay in bringing him to trial. At the habeas corpus hearing, the state made no attempt to introduce evidence which might have explained or excused its failure to prosecute. Defendant, on the other hand, offered evidence that there was ample trial time available to the prosecution had it sought to try his case soon after his arrest. Moreover, it is apparent from an examination of the record that defendant engaged in none of the dilatory tactics which so often render lengthy delays in the administration of justice excusable. The inordinate delay appears to have been caused solely by the order rendered at the request of the state on May 7, 1974 for an investigation into defendant's mental incapacity. Through oversight or neglect defendant was never examined by a lunacy commission and no report on his mental condition was ever filed in compliance with the May 7 order. Defendant simply remained incarcerated in the custody of the sheriff of Vernon Parish. Although La. Code Crim.P. art. 642 prohibits any further steps in the prosecution until the question of mental capacity to proceed is resolved, that article cannot provide a justification for the state's inaction in this case. Where the state moved ex parte to secure a determination of the mental incapacity of the accused who was imprisoned without counsel, it had an obligation to see that an examination of defendant was, in fact, conducted and brought to a timely conclusion. Based on the evidence before us, we can only conclude that, as between defendant and the state, the state must bear full responsibility for the inexcusable delay in bringing defendant to trial or otherwise disposing of his case.
The third factor to be assessed in the balancing test mandated by Barker is the defendant's assertion of his right to a speedy trial. Defendant in this case, an indigent black of questionable mental capacity and without assistance of counsel, was not reasonably in a position to make an effective legal assertion of his constitutional rights. He did, nevertheless, make oral complaints to his jailer concerning his lengthy imprisonment without trial and, with the assistance of a fellow inmate, addressed his grievances to a federal district court judge. We are satisfied that, in view of defendant's lack of counsel and alleged mental incapacity, his efforts to assert his right to a speedy trial were more than adequate to dispel any claim that he knowingly waived his rights or acquiesced in the state's delay in bringing him to trial.
The final factor we must weigh is the actual prejudice suffered by the defendant as a result of the lack of a speedy trial. In Barker, the United States Supreme Court indicated that the question of prejudice must be analyzed in the light of the interests sought to be protected. The Court identified three such interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern on the *1195 part of the accused; and (3) to limit the possibility that the defense will be impaired. In Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), the Court reiterated its position that the prejudice to a defendant caused by a delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings. Inordinate delay may interfere with a defendant's liberty, disrupt his employment, subject him to public obloquy, and create anxiety in him, his family and his friends. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). We are convinced that the lengthy incarceration of defendant in the instant case was particularly oppressive. The reports of the physicians who examined Miller in 1976 disclose that when interviewed he was disoriented and confused as to the reason he was being kept prisoner. The reports also indicate that defendant is probably mentally retarded. While we can only speculate on the degree of anxiety engendered in an accused of apparently low intelligence who is incarcerated for almost two years without financial resources, without appointed counsel, and without even having been formally charged with an offense, we are satisfied that the interests sought to be protected by the right to a speedy trial have been violated. Furthermore, since counsel was not appointed until February, 1976, no investigation was ever conducted on Miller's behalf in an effort to exonerate him from guilt of the offense for which he was arrested. The defendant contends that after two years in prison he has forgotten the names of persons who might have been able to assist him in his defense. Under the particular facts and circumstances of this case, we are convinced that defendant is no longer in a position to provide his counsel with information that would be helpful in the preparation of his defense.
After weighing the facts and circumstances of this case in light of the above factors, we conclude that the state has failed to accord defendant, Buford Miller, his constitutional right to a speedy trial. It is now well established that once a violation of the right to a speedy trial is shown, the only remedy available is the dismissal of the charge pending against the defendant. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); State v. Bullock, 311 So.2d 242 (La.1975). Accordingly, we hold that defendant cannot now be prosecuted pursuant to the bill of information charging him with aggravated burglary. Moreover, any determination that defendant is not presently capable of standing trial for that offense is similarly without effect.
The state argues in opposition to defendant's release from custody that the constitutional claim of denial of a speedy trial was not properly raised by a writ of habeas corpus. La.Code Crim.P. art. 362(2) provides that, pursuant to a writ of habeas corpus, a person held in custody by virtue of a court order shall be discharged if "the original custody was lawful, but by some. . . omission . . . which has since occurred, the custody has become unlawful." The state avers, however, that this rule is modified in the instant case by La.Code Crim.P. art. 642 which directs in relevant part that:
. . . When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.
(Emphasis added.) It is clear from the official redaction comments that the purpose of this article was to protect from prejudice a defendant who might be incapable of safeguarding his own rights. In no sense can a petition for habeas corpus aimed at securing the defendant's release be construed as a "further step in the criminal prosecution." In any event, La.Code Crim.P. art. 642 could not operate to deprive a defendant of his right to a hearing on the legality of his detention in view of the unequivocal pronouncement that "the writ of habeas corpus shall not be suspended" embodied in Article 1, Section 21 of the Louisiana Constitution of 1974. Hence, this argument by the state has no merit.

*1196 DECREE
For the reasons assigned, the ruling of the trial judge refusing to discharge the defendant from custody is reversed, and the case is remanded to the Thirtieth Judicial District Court with instructions to the trial judge to dismiss the bill of information charging the defendant with aggravated burglary and, unless he is currently being held on charges for which he may be tried consistent with this opinion, to discharge him from the custody of the sheriff of Vernon Parish.
NOTES
[1] The order was defective in two respects. La. Code Crim.P. art. 644 (as it existed in 1974) mandated the appointment of a sanity commission consisting of at least one licensed physician. La.Code Crim.P. art. 645 provided in 1974 that the report of the sanity commission be filed within thirty days after the commission's appointment.
[2] The state represented in brief to this court that defendant was taken to East Louisiana State Hospital but was, for some unknown reason, refused admittance. There is no evidence in the record to support this assertion.
[3] There is some evidence that during the construction of the new jail in Vernon Parish, defendant was transferred to a jail in Sabine Parish; however, he was returned to Vernon Parish after the new jail was completed and is presently incarcerated there.
[4] In 1974, La.Code Crim.P. art. 643 provided that, if the defendant did not have counsel when a mental examination was ordered, the court should appoint counsel to represent him prior to and at the hearing on the question of present capacity to proceed. This article was amended by La.Acts 1975, No. 325, § 1 to require that, if a defendant had not already retained counsel, the court shall appoint counsel to represent him before ordering any mental examination of the defendant.