STRUNK, aka WAGNER v. UNITED STATES

No. 72–5521.   Argued April 24, 1973—Decided June 11, 1973

BURGER, C. J., wrote the opinion for a unanimous Court.

*John R. Wideikis* argued the cause and filed a brief for petitioner *pro hac vice.*

*William Bradford Reynolds* argued the cause for the United States.   With him on the brief were *Solicitor General Griswold, Assistant Attorney General Petersen,* and *Jerome M. Feit.*

Opinion of the Court by MR. CHIEF JUSTICE BURGER, announced by MR. JUSTICE DOUGLAS.

Petitioner was found guilty in United States District Court of transporting a stolen automobile from

Wisconsin to Illinois in violation of 18 U. S. C. § 2312 and was sentenced to a term of five years. The five-year sentence was to run concurrently with a sentence of one to three years that petitioner was then serving in the Nebraska State Penitentiary pursuant to a conviction in the courts of that State.

Prior to trial, the District Court denied a motion to dismiss the federal charge, in which petitioner argued that he had been denied his right to a speedy trial. At trial, petitioner called no witnesses and did not take the stand; the jury returned a verdict of guilty. The Court of Appeals reversed the District Court, holding that petitioner had in fact been denied a speedy trial. However, the court went on to hold that the "extreme" remedy of dismissal of the charges was not warranted; the case was remanded to the District Court to reduce petitioner's sentence to the extent of 259 days in order to compensate for the unnecessary delay which had occurred between return of the indictment and petitioner's arraignment.

I

Certiorari was granted on petitioner's claim that, once a judicial determination has been made that an accused has been denied a speedy trial, the only remedy available to the court is "to reverse the conviction, vacate the sentence, and dismiss the indictment." No cross-petition was filed by the Government to review the determination of the Court of Appeals that the defendant had been denied a speedy trial. The Government acknowledges that, in its present posture, the case presents a novel and unresolved issue, not controlled by any prior decisions of this Court.

The Court of Appeals stated that the 10-month delay which occurred was "unusual and call[ed] for explanation as well as justification," 467 F. 2d 969, 972. The Gov-

ernment responded that petitioner had, after receiving the proper warnings, freely admitted his guilt to an FBI agent while incarcerated in the Nebraska Penitentiary, and had stated that he intended to demand a speedy trial under Fed. Rule Crim. Proc. 20. The Government claimed that it had postponed prosecution because of petitioner's reference to Rule 20, and consequently, that a large portion of the delay which ensued was attributable to petitioner. The Court of Appeals regarded this explanation as tenuous; it also rejected the lack of staff personnel in the United States Attorney's Office as a justification for the delay. The entire course of events from the time of arrest through the Court of Appeals plainly placed the Government on notice that the speedy trial issue was being preserved by the accused and would be pressed, as indeed it has been.

On this record, it seems clear that petitioner was responsible for a large part of the 10-month delay which occurred and that he neither showed nor claimed that the preparation of his defense was prejudiced by reason of the delay. It may also well be correct that the United States Attorney was understaffed due to insufficient appropriations and, consequently, was unable to provide an organization capable of dealing with the rising caseload in his office, especially with respect to criminal cases. Unintentional delays caused by overcrowded court dockets or understaffed prosecutors are among the factors to be weighed less heavily than intentional delay, calculated to hamper the defense, in determining whether the Sixth Amendment has been violated but, as we noted in *Barker* v. *Wingo,* 407 U. S. 514, 531 (1972), they must

"nevertheless . . . be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

This served to reaffirm what the Court held earlier in *Dickey* v. *Florida*, 398 U. S. 30, 37–38 (1970):

> "Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." [1]  (Footnote omitted.)

However, in the absence of a cross-petition for certiorari, questioning the holding that petitioner was denied a speedy trial, the only question properly before us for review is the propriety of the remedy fashioned by the Court of Appeals. Whether in some circumstances, and as to some questions, the Court might deal with an issue involving constitutional claims, absent its being raised by cross-petition, we need not resolve. Suffice it that in the circumstances presented here in which the speedy trial issue has been pressed by the accused from the time of arrest forward and resolved in his favor, we are not disposed to examine the issue since we must assume the Government deliberately elected to allow the case to be resolved on the issue raised by the petition for certiorari.

## II

Turning to the remaining question of the power of the Court of Appeals to fashion what it appeared to consider as a "practical" remedy, we note that the court clearly perceived that the accused had an interest in being tried promptly, even though he was confined in a penitentiary for an unrelated charge. Under these circumstances,

> "the possibility that the defendant already in prison might receive a sentence at least partially

---

[1] American Bar Association Project on Standards for Criminal Justice, Speedy Trial 27–28 (Approved Draft 1968) (hereafter ABA, Speedy Trial).

concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." *Smith* v. *Hooey,* 393 U. S. 374, 378 (1969) (footnote omitted).

The Court of Appeals went on to state:

"The remedy for a violation of this constitutional right has traditionally been the dismissal of the indictment or the vacation of the sentence. Perhaps the severity of that remedy has caused courts to be extremely hesitant in finding a failure to afford a speedy trial. Be that as it may, we know of no reason why less drastic relief may not be granted in appropriate cases. Here no question is raised about the sufficiency of evidence showing defendant's guilt, and, as we have said, he makes no claim of having been prejudiced in presenting his defense. In these circumstances, the vacation of the sentence and a dismissal of the indictment would seem inappropriate. Rather, we think the proper remedy is to remand the case to the district court with direction to enter an order instructing the Attorney General to credit the defendant with the period of time elapsing between the return of the indictment and the date of the arraignment. Fed. R. Crim. P. 35 provides that the district court may correct an illegal sentence at any time. We choose to treat the sentence here imposed as illegal to the extent of the delay we have characterized as unreasonable." 467 F. 2d, at 973.

It is correct, as the Court of Appeals noted, that *Barker* prescribes "flexible" standards based on practical considerations. However, that aspect of the holding in *Barker* was directed at the process of determining *whether* a denial of speedy trial had occurred; it did not deal with the remedy for denial of this right. By defini-

tion, such denial is unlike some of the other guarantees of the Sixth Amendment. For example, failure to afford a public trial, an impartial jury, notice of charges, or compulsory service can ordinarily be cured by providing those guaranteed rights in a new trial. The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving—uncertainties that a prompt trial removes. *Smith* v. *Hooey*, 393 U. S., at 379; *United States* v. *Ewell*, 383 U. S. 116, 120 (1966). We recognize, as the Court did in *Smith* v. *Hooey*, that the stress from a delayed trial may be less on a prisoner already confined, whose family ties and employment have been interrupted,[2] but other factors such as the prospect of rehabilitation may also be affected adversely. The remedy chosen by the Court of Appeals does not deal with these difficulties.

The Government's reliance on *Barker* to support the remedy fashioned by the Court of Appeals is further undermined when we examine the Court's opinion in that case as a whole. It is true that *Barker* described dismissal of an indictment for denial of a speedy trial as an "unsatisfactorily severe remedy." Indeed, in practice, "it means that a defendant who may be guilty of a serious crime will go free, without having been tried." 407 U. S., at 522. But such severe remedies are not unique in the application of constitutional standards.

---

[2] It can also be said that an accused released pending trial often has little or no interest in being tried quickly; but this, standing alone, does not alter the prosecutor's obligation to see to it that the case is brought on for trial. The desires or convenience of individuals cannot be controlling. The public interest in a broad sense, as well as the constitutional guarantee, commands prompt disposition of criminal charges.

In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, "the only possible remedy." *Ibid.*

Given the unchallenged determination that petitioner was denied a speedy trial,[3] the District Court judgment of conviction must be set aside; the judgment is therefore reversed and the case remanded to the Court of Appeals to direct the District Court to set aside its judgment, vacate the sentence, and dismiss the indictment.

*Reversed and remanded.*

---

[3] ABA, Speedy Trial 40–41.