Aubrey Langston McCARTY, Appellant,

v.

The STATE of Texas, Appellee.

No. 46146.

Court of Criminal Appeals of Texas.

July 11, 1973.

Rehearing Denied Sept. 7, 1973.

Jack R. Bailey and Paul R. Lawrence, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Ronald G. Woods, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for passing a forged instrument; the punishment, enhanced under the provisions of Article 63, Vernon's Ann.P.C., life imprisonment.

The first ground of error asserts the appellant was deprived of the right to a speedy trial.

The offense is alleged to have occurred on June 2, 1967. On July 8, 1967, the appellant was arrested in Knox County, Tennessee for an offense committed in that state. He was tried, convicted and imprisoned in Tennessee. The record does not clearly show when the appellant was accused of the offense in this case or when a detainer was placed on him by the authorities of this State. The instant indictment was returned December 9, 1968. The appellant was transferred on May 13, 1970, from the Tennessee prison system to a federal prison to serve time for a Federal offense. The appellant was returned to Harris County on June 14, 1971, and an attorney appointed to represent him. A pretrial hearing was had on July 12, 1971, and after another hearing on July 21, 1971, his trial before a jury was commenced on the next day, resulting in the conviction from which he appeals.

The right to a speedy trial in a State case is guaranteed by the Sixth Amendment to the Constitution of the United States as applied through the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). The same rights are assured by Article 1, Section 10 of the Constitution of the State of Texas, Vernon's Ann.St. and Article 1.05, Vernon's Ann.C.C.P.

A "balancing test" to determine whether an accused has been denied the right to a speedy trial under the United States constitutional provision has been formulated by the Supreme Court in the recent case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The guidelines set out by the Supreme Court which must be applied to each individual case require consideration of (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of his right, and (4) the prejudice to the defendant. We will consider each of these criteria as applied to the case at bar.

## LENGTH OF DELAY

■ "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the right of delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case." Barker v. Wingo, 92 S.Ct. 2182 at page 2192.

■■ In determining whether a speedy trial has been denied, the length of delay is measured from the time the defendant was accused. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In this case the appellant was arrested in another state for another offense. As already noted, the exact time when the appellant was accused and the exact time which this State's detainer was requested are not clearly shown in this record. The time between the return of the indictment and the trial was some two years and seven months. Such a delay is not, per se, a deprivation of the appellant's right to a speedy trial, but is a fact requiring further consideration of the appellant's claim. Barker v. Wingo, supra, and see Courtney v. State, 472 S.W.2d 151 (Tex.Cr.App. 1971); Harris v. State, 489 S.W.2d 303 (Tex.Cr.App.1973); McKinney v. State, 491 S.W.2d 404 (Tex.Cr.App.1973).

## REASON FOR THE DELAY

■ In considering the reason for the delay it is said by the Supreme Court that different weight should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense would be weighed heavily against the State. A more neutral reason such as negligence, or overcrowded courts, should be weighed less heavily, but nevertheless should be considered since the ultimate responsibility of such circumstances must rest with the State rather than the defendant. Barker v. Wingo, supra; Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

The reason for the delay in this case is not well developed in the record. The appellant was incarcerated for almost the entire period of time either by Tennessee State authorities or by Federal authorities. The State had made some inquiries and some efforts toward returning the appellant to Texas for trial while he was imprisoned in Tennessee. Before these efforts were consummated he was transferred to the Federal prison. During this time the appellant was bombarding State and Federal Courts with various motions to gain a dismissal of his case rather than a speedy trial. There is no showing that the State intentionally delayed appellant's trial at any stage. There is little to show that the State was negligent in returning the appellant for trial under the circumstances.

## APPELLANT'S ASSERTION OF HIS RIGHTS

The failure of the defendant to assert his right would make it difficult for a defendant to prove that he was denied a speedy trial. The strength of his efforts must be considered along with the length of the delay, the reason for the delay, and particularly by the personal prejudice which is occasioned by the delay. The defendant's assertion of, or failure to assert his right to a speedy trial is but one of the factors to be considered in the overall inquiry into the deprivation of the right. Barker v. Wingo, supra.

The appellant's first request for a speedy trial was received by the Harris County District Attorney's Office on December 26, 1969.

In considering the numerous motions filed by the appellant in the various courts, it is fair to say his prime object was not to gain a speedy trial, but was an attempt to

have the charge against him dismissed. Although these various motions served as notice to the prosecutors, they somewhat weaken the appellant's present claim that he purposefully pursued and asserted his right to a speedy trial at all times.[1]

1. A chronology and summary of the appellant's efforts to gain a speedy trial and the official action taken as reflected by the record follows:

| | |
|---|---|
| December 9, 1968 | Indictment returned. |
| July 2, 1969 | Letter from appellant to the District Attorney of Harris County in part reading: "Request that your office remove from against me all charges and detainer warrants you have so issued." No mention of speedy trial was made. |
| October, 1969 | Appellant was sent to Bush Mountain Prison unit in Tennessee. |
| December 26, 1969 | Letter from appellant to the District Attorney of Harris County stating: "You will treat this letter as a Habeas Corpus petition ad-prosequendom requesting immediate trial under the fair and speedy trial clause of the Sixth Amendment to the Federal Constitution," and " . . . afford me a trial forthwith or withdraw the 'detainer warrant' . . . " |
| January 15, 1970 | Letter from the District Attorney of Harris County to the Tennessee Department of Corrections which acknowledges appellant's request for a speedy trial and request the procedures which the Tennessee authorities will require for the return of the appellant for trial in Texas. |
| March 4, 1970 | Letter from the Tennessee authorities outlining the procedures for returning appellant to Harris County for trial. It stated that Tennessee authorities would require that extradition be utilized, coupled with an executive agreement. |
| May 8, 1970 | Appellant was transferred to Federal prison at Texarkana. |
| September 15, 1970 | Letter from appellant to the District Attorney of Harris County which outlines the past history of appellant's communications and informs the District Attorney that he is now in Federal prison and request "that your office remove all charges and detainer warrant from against me." Letter makes no request for a speedy trial. |
| December 1, 1970 | Appellant, then a Federal prisoner, filed a writ requesting the Supreme Court of Texas to issue an order to the District Attorney of Harris County to withdraw the detainer warrant and to enjoin the District Attorney from taking action on those warrants. No request for a speedy trial was made. |
| December 4, 1970 | Letter from a representative of the Supreme Court of Texas to appellant advising him that the Court had "no jurisdiction to grant you the relief you seek." |
| December 17, 1970 | Letter from a representative for the Supreme Court of Texas to appellant. Apparently, appellant made a reply by letter to the December 1, 1970, letter of the Supreme Court; however, it does not appear in the record. This letter by the Supreme Court again informs appellant that the Court has no jurisdiction to grant the relief sought, stating that the Supreme Court "cannot direct a trial court to withdraw detainers, see Pope v. Ferguson, copy of which is attached." |
| January 18, 1971 | Appellant filed a writ of habeas corpus in the Federal District Court of the Southern District of Texas. Appellant misstated the facts concerning the State's reaction to his request for a speedy trial. |

The request was for dismissal of the charge against appellant.

| March 12, 1971 | The Federal District Court entered a judgment and an order dismissing the writ for failure to exhaust appellant's State remedies. |
| --- | --- |
| March 19, 1971 | Appellant filed a "Petition for Writ of Mandamus" with the Court of Criminal Appeals. Request order to have Harris County give appellant a speedy trial. Appellant claims that his December 26, 1969, letter was a Petition for speedy trial filed in State District Court in Harris County, while in fact that letter was directed to the Harris County District Attorney's Office. |
| April 6, 1971 | Letter from a representative for the Supreme Court of Texas stating to the appellant that his Petition for Writ of Mandamus which he had mailed to the Clerk of this Court had been transferred to the Supreme Court because the Supreme Court alone had jurisdiction to grant the requested relief of speedy trial, and requested appellant advise the Court in which District Court his case was pending. |
| April 14, 1971 (Date received) | Letter from appellant to the Supreme Court of Texas replying to the Court's April 6th letter stating the indictment numbers, but that he did not know in which Harris County District Court the indictments were pending. Appellant's letter read in part: "This petitioner would ask that you regard this letter as a motion for dismissal." |
| April 14, 1971 | A representative of the Supreme Court of Texas by letter again informed appellant that the Court could not order dismissal of the indictments pending against him. He was again cited to Pope v. Ferguson. The Court again offered to assist in obtaining a speedy trial for appellant and requested appellant inform the Court if he still wished a speedy trial. |
| April 26, 1971 | Appellant filed his second Writ of Habeas Corpus with the Federal District Court of the Southern District of Texas requesting the dismissal of the charge against him. |
| May 13, 1971 | Letter from the District Attorney of Harris County to appellant. Informs appellant that, due to the heavy docket, that the earliest he could be tried is July 21, 1971. He was also informed that he was going to be released on or before July 14, 1971, from the Federal prison and that he would be brought to Harris County and an attorney would be appointed for him. |
| May 19, 1971 | Appellant filed a second Petition for Writ of Mandamus with the Court of Criminal Appeals expressly seeking dismissal of the charge against him. Appellant asserted that, due to the length of delay, that an offer of a speedy trial by the Supreme Court of Texas was "a bit ridiculous." |
| June 2, 1971 | Letter from the Administrative Assistant of this Court again explaining that neither this Court nor the Supreme Court could grant the relief of dismissal. He informed appellant that a speedy trial could be obtained if he so desired. |
| June 14, 1971 | Appellant was returned to Harris County and an attorney was appointed for appellant. |
| July 12, 1971 | Pretrial motion heard. |
| July 20, 1971 | Federal District Court dismissed writ because the appellant was now in Harris County and a proper State Court could decide the speedy trial issue. |
| July 21, 1971 | Second pretrial motion heard. |
| July 22, 1971 | Trial on the merits. |

## PREJUDICE TO THE DEFENDANT

■ The three interests to be considered in determining prejudice to the defendant are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. Barker v. Wingo, supra; see also, United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627; Smith v. Hooey, supra; Klopfer v. North Carolina, supra; Harris v. State, supra, and McKinney v. State, supra.

During almost the entire time in question, the appellant was in custody under convictions in other jurisdictions. Under these circumstances we are therefore mainly concerned with whether or not appellant's ability to defend himself was prejudiced by the delay. Harris v. State, supra.

■ Although a showing of "actual prejudice" is not required in Texas, the burden is on the accused to make some showing of prejudice which was caused by the delay of his trial. Harris v. State, supra, and Courtney v. State, supra.

The appellant makes a rather weak claim that he was deprived of an alibi witness and certain character witnesses.[2]

■ When non-availability of witnesses is the basis of the alleged prejudice, an appellant must show that the witnesses were unavailable at the time he was tried; that their testimony may be relevant and material to his defense, and that due diligence was exercised in an attempt to locate such witnesses at the time he was tried. This would constitute some showing of prejudice. Harris v. State, supra.

The appellant in this case has failed to make such proof. No subpoenas were issued and no other efforts were shown to have been made to secure the trial attendance of the alleged missing witnesses. Appellant made no motion for continuance in order to locate these witnesses as was done in Dickey v. Florida, supra. The appellant made no request for investigative funds which are provided for in Article 26.05 § 1(d), V.A.C.C.P. We conclude that the appellant has not made "some showing of prejudice."

It is also appropriate to consider the strength of the State's case. The State's proof in this case consisted of close-up photographs of the appellant and the checks which were allegedly passed, which were shown to have been made at the time the checks were passed, the checks themselves, and the testimony of the witnesses to whom the checks were passed. We must view the appellant's claim that he was deprived of an alibi witness in light of such clear and overwhelming evidence.

Considering all of the factors, including the strength of the State's case, we find that the appellant was not prejudiced by the delay in his ability to defend himself. Barker v. Wingo, supra; Harris v. State, supra; McKinney v. State, supra, and Courtney v. State, supra. See State v. Bishop, 493 S.W.2d 81 (Tenn.S.Ct.1973).

■ Applying the balancing test of Barker v. Wingo, supra, we find no denial of appellant's right to a speedy trial, and overrule his contention.

The next complaint is that: "The habitual criminal statute was unconstitutionally applied to appellant, as it deprived the ap-

2. The appellant's testimony concerning the alleged alibi witness, a female companion, was as follows:

"Q. All right, sir. Did you know a L_____ T_____?
A. Yes, sir.

. . . . .

A. We were together at the time of these alleged offenses. I will state, because it will come out anyway and it is relevant, that I did live with L_____ for several, a number of months."

When asked in what manner her testimony might aid in his defense appellant replied:
"A. As to my whereabouts and behavior and activities at that time."

pellant of the equal protection under the laws as guaranteed by the Fourteenth Amendment."

■ The appellant was charged as a recidivist and the primary offense charged has a comparatively light maximum penalty. It is appellant's contention that he was not equally treated because his bargaining power on a plea of guilty was less than one who was charged as a recidivist where the primary offense has a greater maximum penalty. He argues that a prosecutor will more readily enter into a plea bargain where the maximum penalty for the previous offense is, for example, twenty-five years as opposed to five years. This argument is without merit because it erroneously assumes that a defendant has a constitutional right to a plea bargain. This ground of error is overruled.

■ The next contention is: "There was error in the trial court when it refused to order or allow a psychiatric examination of appellant to determine his competency at the time the alleged offense occurred."

In his argument under this ground of error the appellant relies upon Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966), and Morales v. State, 427 S.W.2d 51 (Tex.Cr.App.1968). These cases are concerned with an accused's competence to stand trial. As was pointed out in Nilsson v. State, 477 S.W.2d 592 (Tex.Cr. App.1972) insanity as a defense should not be confused with the issue of present competency to stand trial.

■ The facts in the record in relation to this alleged ground of error show it to be non-meritorious. Appellant first requested a psychiatric examination on July 21, 1971, during a hearing on his motion to dismiss the indictment. The court overruled appellant's motion, but sua sponte re-quested a designated psychiatrist to examine the appellant before court convened the following day. An examination was made by that psychiatrist and his testimony appears in the record. The appellant did not further pursue the matter until August 19, 1971, when, at the time of filing an amended motion for new trial, a written motion requesting a psychiatric examination of the appellant was also filed. This motion was not presented to the trial court until October 21, 1971, at which time the court overruled the motion. The issue of insanity at the time of the commission of the offense is a defensive issue which must be raised during the course of the trial on the merits. See Cross v. State, 446 S.W.2d 314 (Tex.Cr.App.1969) and Fuller v. State, 423 S.W.2d 924 (Tex.Cr.App.1968).

The last ground of error complains of the admission into evidence of other separate offenses.

■ Two checks which were drawn on the same day, on the same bank, in favor of the same payee and signed by the same purported maker as the check for which the appellant was being tried, were admitted into evidence. Photographs of the appellant and the two checks made when these checks were passed and evidence that they had been forged were also admitted.

This evidence, even though it revealed extraneous offenses, was admissible to prove the essential element of the offense of passing a forged instrument that the appellant knew the instrument was a forgery when he passed it. Albrecht v. State, 486 S.W.2d 97 (Tex.Cr.App.1972).

The judgment is affirmed.

Opinion approved by the Court.

ONION, Presiding Judge (dissenting).

Believing that the appellant was denied his right to a speedy trial, I dissent.