Albert REED, Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–185–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 26, 1982.

Discretionary Review Refused
Dec. 8, 1982.

Arthur Lapham, Hartman, Lapham, Seerden & Walker, and James L. Post, Houston, Jones & Post, Victoria, for appellant.

Knute Dietze, Dist. Atty., Victoria, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

A Victoria County jury convicted Albert Reed, Jr., of the murder of Barbara Jean Serrato. The trial court then assessed Reed's punishment at life imprisonment. The appellant brings to our attention five rulings of the trial court, which he insists are erroneous. We affirm.

On June 8, 1980, Officer Robert Mayfield of the Victoria Police Department responded to a report of a shooting in an apartment building. Upon arriving at the scene, he discovered a wounded man lying in the bedroom and a woman lying on a couch with several bullet wounds to her body. Although both were still alive at the time, they died soon thereafter.

Officer Mayfield's investigation revealed that the woman was Barbara Serrato, occupant of the apartment. Two of her neighbors, Barbara Pena and Sammie Lott, witnessed the shooting. They both knew the appellant and had seen him approaching Ms. Serrato's apartment. They observed Reed unlock Ms. Serrato's apartment door with a key and enter the apartment while reaching for a gun. At that time, Ms. Pena became alarmed and ran upstairs to call the

police on a neighbor's phone, while Mr. Lott remained in his apartment listening to an argument between Ms. Serrato and Reed. He heard the appellant asking for his camera. Ms. Pena returned to Lott's apartment and both remained in the doorway as the shouting continued.

At the outset of the argument, Pope was lying on the bed remaining silent. After the shouting continued for awhile, Pope remarked that this was no concern of his and attempted to leave. Both witnesses testified that they heard the defendant tell Pope that he was not going anywhere and then saw the defendant shoot Pope several times. Ms. Serrato screamed and the defendant turned and shot her. As the defendant ran out of the apartment, he noticed the witnesses and threatened to shoot Lott.

After the shooting was over, the witnesses remained inside Lott's apartment for a few minutes because, according to them, they feared the defendant. They then went to the neighbor's quarters to call the police. Both stated that they observed no weapons in the hands of the victims, nor did the victims threaten or move toward the defendant. The police, thereafter, found no weapons in the apartment.

Ms. Pena explained that the defendant and Ms. Serrato had lived together for awhile, but that he had left her. She recalled that the deceased once chased the defendant with a knife after he hit her and that on another occasion he beat her up and threatened her with a gun.

Lott, during the course of his testimony, revealed that he had been convicted of a felony for stabbing someone and also had been convicted of carrying a handgun. On cross examination, he divulged that he had been arrested many times for fighting both with his fists and with a bottle.

The defendant then testified to his version of the events. Defense counsel began the direct examination of his client by eliciting from him some general background information, including the extent of his past criminal activities. Reed answered questions about his first involvement with a life of crime, which occurred when he was a young boy. He told of DWI arrests, assault cases and conviction which resulted in a prison term. He described this last incident as "self defense."

Next, appellant described his relationship with Ms. Serrato. He said that although he enjoyed a good relationship with his wife, he met Ms. Serrato about a year and a half ago and got mixed up with her because he felt sorry for her. Even though he realized that she was a prostitute, he started liking her and began paying rent for her apartment. Reed said that she owned a pistol, which she kept in the house. When they had arguments, he claimed that she whipped him, hit him many times, called him dirty names and threatened him with her gun and a butcher knife. He explained that although he was a bit taller, her weight exceeded his.

After Reed decided to leave Ms. Serrato, he wanted to retrieve his clothes and other belongings from her apartment and called the police to accompany him there. He told them that he was afraid of her. He said that he did not manage to get all of his possessions back, however, and returned a week later at 2 o'clock in the morning to do so. Reed admitted that he had been drinking and was carrying his gun with him. He explained that he brought his gun with him because he had decided to stay the night and did not want to leave it in his car. He further stated that he expected trouble if she was there and was afraid she would kill him. Reed testified also of her refusal to give him his belongings and of being attacked by both Pope and Ms. Serrato. He said that he saw her go after the butcher knife she kept on a dresser but he cut her off and shot them both.

Although he referred to the shooting as an accident during direct examination, he told the district attorney, "No, I wouldn't say it was an accident . . . . the way I called it, it was a man who was trying to protect his own self."

The prosecution reviewed the appellant's criminal record beginning with arrests in 1944. To most of the questions, Reed re-

plied that he could not remember. He was asked about many arrests for burglary, aggravated assault, attempt to commit homicide and aggravated assault on a police officer. After all these questions, defense counsel then objected that they concerned arrests only and were inadmissible. His objection was overruled. The district attorney continued with his questions concerning assaults and DWI arrests.

The defense also presented the testimony of a police officer who related that the deceased's reputation in the community for being peaceful and law abiding was bad. After both sides had closed, the judge reviewed the charge with the attorneys and refused to include a paragraph authorizing a conviction for criminal negligence.

The charge was read to the jury, then the defendant asked for permission to present an additional witness. The court allowed him to do so and told the State that it could present witnesses in rebuttal of this testimony. The defense witness, a relative of the appellant, described a visit by him to her mother's house which was disrupted by Ms. Serrato's threats and violence. The State then elicited the testimony of a friend of Ms. Serrato, who recited a similar narrative except that the appellant was the aggressor. Both incidents occurred well before the shooting, but the situation described by the State's witness took place a year earlier. Defense counsel objected that the incident was too remote, and that this testimony was not offered to rebut his witness. He also claimed surprise because the State did not provide the name of the witness in the discovery list. The State asked to reopen its case, and the trial court allowed it to do so. The State continued its examination of the witness and brought out the fact that she had only contacted the prosecution that morning. Both sides closed again and final arguments took place.

Before the trial began, the defendant had filed a motion for pretrial discovery requesting the court to order the prosecution and all law enforcement agencies to furnish him with a list of items including the crimi-

nal records of its witnesses. The court did not grant the motion but the district attorney had already voluntarily provided many of the requested items when it gave defense counsel a copy of its entire file. Before the trial, the defense asked again for the criminal records of Sammie Lott and of the deceased. The district attorney responded that he did not have the information in his file, and the judge denied the request.

In a bill of exception, the defense presented the custodian of records for the Victoria Police Department, who testified that the department had a computer terminal through which they could gain access to the National Crime Information Center (N.C.I.C.) records, as well as its own index file reflecting contacts of the Victoria Police Department with a subject. Defense counsel pointed out that the State had a printout of the appellant's criminal record and argued that he should have the same opportunity to impeach the State's witnesses. After denying the request for discovery, the trial court allowed appellant to complete the record by directing the witness to obtain N.C.I.C. printouts on Barbara Serrato and Sammie Lott. These reports and the Victoria Police Department files which were made part of the appellate record show that Sammie Lott was convicted of an assault, a weapons offense and disturbing the peace and was involved in many fights. Whether the convictions are misdemeanors or felonies is not shown. The police files do not reflect the disposition of the charges nor do their abbreviated notations make it clear whether the subject was the perpetrator or the victim of the criminal conduct. Ms. Serrato's N.C.I.C. report shows that she was convicted of larceny and drunkenness. The Victoria records contain many entries on theft and disturbances, and many show that she was a victim. No entry clearly reveals that she was a participant in a violent crime.

Appellant complains in his second ground that the trial court erred in denying a charge on criminal negligence.[1] If the

1. Texas Penal Code § 19.07 (Vernon 1974), pro-         vides that it is a Class A misdemeanor to cause

evidence raises an issue and the charge is properly requested, the trial court must submit the charge to the jury. *Day v. State,* 532 S.W.2d 302, 306 (Tex.Cr.App. 1976). A defendant's testimony alone is sufficient to raise an issue. *Id.* Where the facts show that there was a possibility that the gun went off by accident, failure to charge the jury on homicide by criminal negligence is reversible error. *London v. State,* 547 S.W.2d 27, 28 (Tex.Cr.App.1977).

██ We have reviewed the entire record and agree with the trial court that there was no evidence of criminal negligence. It is true that the appellant characterized the episode as an "accident," but he later admitted that it was no accident. Appellant's second ground is overruled.

██ Appellant contends in his first ground of error that the court should not have permitted the State to question him regarding his arrest record. Tex.Code Crim.Pro.Ann. art. 38.29 (Vernon 1979), provides that charges against witnesses in criminal cases, including defendants who testify, shall not be admissible for impeachment unless the charge results in a final conviction. Only final convictions of felonies and of misdemeanors involving moral turpitude which are not too remote may be used by the State to impeach the witnesses. *Nelson v. State,* 503 S.W.2d 543, 545 (Tex. Cr.App.1974); *Ochoa v. State,* 481 S.W.2d 847, 850 (Tex.Cr.App.1972). The reason for this rule is to limit the prejudicial effect of past accusations, thereby preventing juries from convicting defendants for a "propensity to commit crimes." *Murphy v. State,* 587 S.W.2d 718, 721 (Tex.Cr.App.1979). An exception to this rule exists, however, when a witness portrays his past involvement with crime as nonexistent, *Hoffman v. State,* 514 S.W.2d 248, 254 (Tex.Cr.App.1974), or volunteers only fragmentary information

about it. *Griffith v. State,* 430 S.W.2d 197, 198 (Tex.Cr.App.1968). When a defendant on direct examination created a false impression by testifying only about a single conviction, the Court of Criminal Appeals has held that he could not complain about the prosecution's inquiries regarding his charge for another offense. *Reese v. State,* 531 S.W.2d 638, 641 (Tex.Cr.App.1976).

██ In the case before us, the prosecution was entitled to clarify the murder conviction and caused no harm by mentioning offenses for which the appellant had already acknowledged responsibility. Reed invited further examination of his criminal background by minimizing its extent while creating the impression that he was divulging all. Also, defense counsel failed to object until the district attorney had propounded questions about seven prior arrests. An objection must be made at the first opportunity to be considered timely, and where there is no reason for delay, the objection is waived. *Marini v. State,* 593 S.W.2d 709, 716 (Tex.Cr.App.1980); *Rodriguez v. State,* 577 S.W.2d 491, 493 (Tex.Cr. App.1979). The first ground of error is overruled.

██ In his third ground of error, appellant complains that the trial court erred when it denied his motion for discovery of the criminal records of Sammie Lott and Barbara Serrato. Tex.Code Crim.Proc.Ann. art. 39.14 (Vernon 1979), establishes that a defendant who shows good cause may obtain an order from the court requiring the State to produce material evidence in the custody or control of the State or any of its agencies. We believe that the defense met all of the criteria of the statute by showing the use for this evidence, and its existence within the custody or control of the Victoria Police Department. Compare *Rodriguez v.*

the death of an individual by criminal negligence. The definition of criminal negligence appears in Texas Penal Code § 6.03(d) (Vernon 1974): "A person acts with criminal negligence, or is criminally negligent, with respect *to* circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk

that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

*State,* 513 S.W.2d 22, 27 (Tex.Cr.App.1974); *Thomas v. State,* 482 S.W.2d 218, 219 (Tex. Cr.App.1972); *Garcia v. State,* 454 S.W.2d 400 (Tex.Cr.App.1970). The State's use of an N.C.I.C. printout of the appellant's criminal history is a demonstration that obtaining such printouts was within the State's control.

We believe that the trial court should have granted the appellant's request. In discovery cases we will only reverse, however, if the omitted evidence creates a reasonable doubt which did not otherwise exist. *Quinones v. State,* 592 S.W.2d 933, 941 (Tex.Cr.App.1980), cert. denied 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). See *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Our review of the criminal records requested by the appellant convinces us that they would not have effected such a change. On cross-examination Sammie Lott disclosed all the information requested and possibly more. The need for the criminal record of the deceased was to establish her violent character, thereby substantiating the appellant's claim of self defense. From our examination of Ms. Serrato's criminal records, we cannot conclude that access to those records would have assisted the appellant to the extent necessary to require a reversal. Appellant's *third ground* is overruled.

In his fourth ground of error, the appellant complains about error in permitting the State to reopen the case. Tex.Code Crim.Proc.Ann. art. 36.02 (Vernon 1981), gives trial judges wide latitude in their decisions to receive testimony. They may do so anytime before the argument is concluded, if it appears necessary to a due administration of justice. In this case, the existence of the witness was made known to the State after it had closed its case, and it was within the discretion of the trial court to permit the testimony. *Volkland v. State,* 510 S.W.2d 585, 588 (Tex.Cr.App. 1974). Appellant argues that the State's failure to provide him with the name of witness constituted a violation of discovery, therefore, admission of the testimony was an abuse of discretion. The witness explained that she had only just come forward. We find no abuse of discretion. Appellant's fourth ground is overruled.

In his final ground of error, appellant disputes the admissibility of the testimony of the State's last witness. He contends that her recital of a violent interaction between the appellant and the deceased which took place a year earlier was inadmissible prior conduct. Tex.Penal Code Ann. § 19.06 (Vernon 1974) provides as follows:

"In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

In murder cases, testimony concerning the relationship between the accused and the deceased is admissible to show threats by the appellant, *McClure v. State,* 430 S.W.2d 813, 815 (Tex.Cr.App.1968); *Caudle v. State,* 162 Tex.Cr.R. 439, 286 S.W.2d 434, 435 (1956), as well as actual attacks. *Alford v. State,* 505 S.W.2d 813, 815 (Tex.Cr. App.1974); *Stephen v. State,* 163 Tex.Cr.R. 505, 293 S.W.2d 789, 790 (1956). In *Stephen,* the attack occurred six years earlier, and in *McClure,* the threat was made three years earlier. The misconduct in this case was not too remote to be admitted. The use of such evidence serves to rebut the theory of self defense and to show motive. *Lolmaugh v. State,* 514 S.W.2d 758, 759 (Tex.Cr.App.1974). We believe that there was sufficient justification for admitting the testimony of the State's final witness. Appellant's fifth ground of error is overruled.

The judgment of the trial court is affirmed.