Joe Willie PRESCOTT, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–84–004–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 12, 1985.

Washington & Randle and Craig A. Washington, Houston, for appellant.

Tim Curry, Crim. Dist. Atty., and Mary Thornton Taylor, Asst. Dist. Atty., Fort Worth, for State.

## OPINION ON MOTION FOR REHEARING

HILL, Justice.

Our original opinion in this case, issued June 20, 1985, reversed Joe Willie Prescott, Jr.'s conviction for murder and remanded his case for a new trial. The State filed a motion for rehearing, contending that we erred in finding that Prescott's statement during redirect examination that, "this is my first time of going through this," did

not allow the State to elicit testimony regarding a prior extraneous offense. Convinced that the State's contention is well-founded, we withdraw our original opinion and substitute the following opinion.

The judgment is affirmed.

Joe Willie Prescott, Jr. appeals his conviction by a jury of the offense of murder. TEX.PENAL CODE ANN. sec. 19.02(a)(1) (Vernon 1974). The jury assessed his punishment at 35 years confinement in the Texas Department of Corrections. In three grounds of error, Prescott urges that the trial court erred by overruling his motion to dismiss for failure to grant a speedy trail; by overruling his objection to testimony concerning an extraneous offense; and by quashing his subpoena for jurors upon his motion for new trial.

In ground of error number one, Prescott alleges that the trial court erred when it overruled his motion to dismiss for failure to grant a speedy trial. His trial was delayed so long, he claims, that a key defense witness became unavailable, and, as a result, the State was able to convincingly argue that the witness's statement was "fiction".

 The right to a speedy trial in a State case is guaranteed by the Sixth Amendment to the Constitution of the United States as applied through the Fourteenth Amendment. *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *McCarty v. State,* 498 S.W.2d 212 (Tex.Crim.App.1973). A "balancing test" is used to determine whether an accused has been denied the right to a speedy trial under the United States constitutional provision. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The guidelines set out by the Supreme Court which must be applied to each individual case require consideration of (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) the prejudice to the defendant.

## LENGTH OF DELAY

 In determining whether a speedy trial has been denied, the length of delay is measured from the time the defendant was accused. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *McCarty v. State,* 498 S.W.2d at 215.

In the case at bar, Prescott was indicted on January 13, 1981, for the shooting death of Raymond Loving on November 23, 1980. Jury voir dire began on November 1, 1983. The delay from the time of accusation until the time of trial was almost three years. It was held in *McCarty* that a delay of two years and seven months is not, per se, a deprivation of the appellant's right to a speedy trial, but is a fact requiring further consideration of the appellant's claim. *McCarty v. State,* 498 S.W.2d at 215. We reach the same conclusion as to the facts in this case.

## REASON FOR THE DELAY

 In considering the reason for the delay it is said by the Supreme Court that different weight should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense would be weighed heavily against the State. A more neutral reason such as negligence, or overcrowded courts, should be weighed less heavily, but nevertheless should be considered since the ultimate responsibility of such circumstances must rest with the State rather than the defendant. *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 29 2192; *McCarty v. State,* 498 S.W.2d at 215.

After his indictment on January 13, 1981, Prescott asked for a continuance on February 12, 1981, in order to better prepare for trial. The State announced ready on February 12th, April 9th, June 25th, and October 15th.

On October 29, 1981, two witnesses, Daniel Punch, Jr. and Willie Robinson, signed

written statements corroborating Prescott's account of the shooting incident.

The State continued to announce ready on November 19, 1981, March 4th, April 1st, June 3rd, September 23rd and November 18, 1982. On November 18th, Prescott made a motion for a speedy trial, alleging that his witnesses were becoming unavailable. The motion was granted and the case was set for March 17, 1983. The four-month delay was caused, according to the State, by the trial court's crowded docket. In March, the case was reset for August 18th at the request of the State. On appeal, the State contends that the postponement was requested because the prosecutors were in the middle of a capital murder case, and that the postponement was for five months because of the crowded docket. Prescott contends that the State wanted the postponement in order to first try Prescott on an unrelated charge.

On August 30, 1983, Prescott made a motion to dismiss for failure to grant a speedy trial, which motion was denied. At the hearing, Prescott's private investigator testified that he had been hired to find Punch and Robinson only three days previously. No subpoenas were issued until the next day, when the court granted Prescott a continuance in order to locate Punch and Robinson. At the trial in November, Punch was present but Robinson was missing.

Prescott asked for and received two continuances, both for the purpose of locating witnesses. The State asked for and received one resetting. Whatever the State's reason for requesting the resetting, there is no showing that the State intentionally delayed Prescott's murder trial for the purpose of hampering his defense. Prescott had difficulty locating witnesses from the time he was indicted. There is no showing that the State's one five-month postponement was the cause of the witnesses being hard to locate.

## ASSERTION OF HIS RIGHT

As previously noted, Prescott was granted a continuance on February 12, 1981, in order to locate witnesses. In his application for the continuance, Prescott states "I, THE DEFENDANT in this cause, fully understand that I have a right to demand a speedy trial in my case under Article 32A CCP and do hereby waive that right." He did not assert his right to a speedy trial until he filed his motion for a speedy trial on November 18, 1982, two years from when he was first accused and one year from when he obtained statements from Punch and Robinson. When the case was about to proceed to trial in August 1983, he asked for a further delay.

## PREJUDICE TO THE DEFENDANT

■ The three interests to be considered in determining prejudice to the defendant are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *McCarty v. State*, 498 S.W.2d at 218.

Prescott does not complain that he was subjected to oppressive pretrial incarceration. The record reflects that he was free on bond in November 1982 when he asked for a speedy trial.

He also does not complain of any anxiety or concern. He made no speedy trial assertion for almost two years and was willing in August 1983 to further delay the trial an additional two months.

He does, however, complain that his defense was impaired because without Robinson available to testify at the trial, the State could argue that Robinson's written statement was "fiction".

■ Although a showing of "actual prejudice" is not required, the burden is on the accused to make some showing of prejudice which was caused by the delay of his trial. *McCarty v. State*, 498 S.W.2d at 218. When non-availability of witnesses is the basis of the alleged prejudice, an appellant must show that the witnesses were unavailable at the time he was tried, that their testimony was relevant and material to his

defense, and that due diligence was exercised in an attempt to locate such witnesses at the time he was tried. This would constitute some showing of prejudice. *Id.*

It is undisputed that Robinson was unavailable at the trial. However, no subpoena was issued, nor was a private investigator hired to find him until after the August trial setting. Robinson's testimony, in the form of a written, signed and notarized statement, was read to the jury. The statement gave the same version of the shooting incident as was presented to the jury by Prescott and by Punch, who was available and did testify. According to Prescott, Punch and Robinson, the deceased was shot when he and Prescott struggled over possession of Prescott's gun. The State, however, was able to present other witnesses who swore that there was no struggle, and that Prescott shot the deceased without provocation from a distance of several feet. We can infer from the jury's guilty verdict that the jury chose to believe the State's witnesses rather than Prescott and his two witnesses.

### CONCLUSION

■ Applying the balancing test of *Barker v. Wingo* as outlined above, we do not find that Prescott's right to a speedy trial was unconstitutionally denied. We overrule ground of error number one.

Prescott's ground of error number two contends that the trial court erred in overruling his objection to the State eliciting testimony regarding a prior extraneous offense. Upon recross-examination of Prescott, the State, over objection, was allowed to elicit testimony about a prior trial for another felony offense. The State argues that Prescott opened the door for such impeachment. We agree.

On the initial cross-examination of Prescott, the State questioned him about the two witnesses' statements previously referred to here. Upon redirect, the following exchange took place:

[By counsel for appellant]

Q. Now, did you have any control over what day that I decided to work on your case in 1981?

A. Did I have any control over what day?

Q. When I decided to take a statement or do anything in your case?

A. No, sir, I had no control over that. Excuse me. Are you asking me when you decided to take a statement from the witness—

Q. Yeah. Did you have any control over what day I decided to do that?

A. No, sir.

Q. When I scheduled it?

A. No, sir.

Q. Did you—do you find anything unusual that the lawyer decided to work on your case took two statements one day?

A. Well, I'm—*this is my first time of going through this.* Hopefully my last. In other words, I don't—*I'm not sure about the legal lawyer* (pause) *whatever.*

Q. Okay.

A. *Procedures.* [Emphasis added.]

The State asserts that Prescott's statement, which is emphasized above, invited his impeachment by eliciting testimony of his prior trial for a felony offense.

On recross-examination, the State questioned Prescott as follows:

[By the State]

Q. Now, you said this is the first time that you have ever been—you have ever gone through this?

A. This is the first time I was ever involved in this incident.

Q. No. Just a few minutes ago you told the jury—we're talking about all these procedures and such.

Prescott then objected to further questioning along these lines and a hearing was had outside the presence of the jury. Prescott's motion to limit cross-examination was overruled and the State was allowed to continue within certain guidelines set by the court. The State then elicited testimony from Prescott that a year previous to the present trial he had "stood trial for

another felony offense in this very courtroom" and "[i]n front of this same judge."

The State's use of prior trials of a defendant for impeachment purposes is controlled by TEX.CODE CRIM.PROC. ANN. art. 38.29 (Vernon 1979). It is undisputed that the trial referred to by the State had not, at the time of the present trial, resulted in a final conviction. Evidence of extraneous acts are not generally admissible for impeachment purposes. *See Hoffman v. State*, 514 S.W.2d 248, 254 (Tex. Crim.App.1974). An exception to this rule exists "where the witness makes blanket statements concerning his exemplary conduct such as having never been arrested, charged or convicted of any offense, or having never been 'in trouble,' or purports to detail his convictions leaving the impression there are no others." *Ochoa v. State*, 481 S.W.2d 847, 850 (Tex.Crim.App.1972).

Here, the trial court saw and heard Prescott's statement that "this is my first time of going through this." The trial court also heard his explanation, that he meant to say that he'd never been "involved in this incident." The court determined that Prescott's original remark implied that he'd never before been involved in criminal court procedures, and we agree with that determination. Since Prescott had actually been involved in a felony trial in the same courtroom before the same judge just a year previously, we find that the testimony about this extraneous offense is admissible for the purpose of impeachment. *Bell v. State*, 620 S.W.2d 116, 125 (Tex.Crim.App.1980) (opinion on rehearing); *Orozco v. State*, 301 S.W.2d 634, 635 (Tex.Crim.App.1957). Prescott's second ground of error is overruled.

In his third ground of error, Prescott claims that the trial court erred when, during the hearing on his motion for new trial on the ground of jury misconduct, it quashed subpoenas which Prescott had issued for the jurors. The subpoenas were necessary, Prescott stated at the hearing, because none of the jurors was willing to give an affidavit about the jury's deliberations.

It is well settled in Texas that a juror's affidavit or an explanation for its absence is required to support a motion for new trial on the grounds of jury misconduct. *Bearden v. State*, 648 S.W.2d 688, 689–90 (Tex.Crim.App.1983). Otherwise, "a floodgate of mere 'fishing' with a dragnet would be turned loose, unsupported by affidavit or the record." *Hicks v. State*, 75 Tex.Crim. 461, 171 S.W. 755, 765–66 (Tex. Crim.App.1913) (opinion on rehearing). No affidavits were attached to Prescott's motion for new trial, and the motion did not contain any explanation for the failure to attach affidavits.

The trial court did not err in quashing the subpoenas where there was no affidavit or evidence of any kind on the record to support Prescott's claim of jury misconduct. We overrule Prescott's third ground of error.

The judgment is affirmed.

ASHWORTH, J., filed an opinion concurring in part and dissenting in part.

BURDOCK, J., filed an opinion dissenting in part and concurring in part.

ASHWORTH, Justice, concurring in part and dissenting in part.

I dissent to that part of the majority opinion which overrules appellant's first ground of error—that his motion to dismiss should have been granted because he was denied a speedy trial.

The facts and applicable law are properly set forth in the majority opinion with regard to the issue of speedy trial. However, as viewed by this writer, such facts and law required the granting of appellant's motion to dismiss. Appellant was indicted on January 13, 1981; on February 12, 1981, he secured a continuance to better prepare for trial. Statements of two corroborating witnesses were secured on October 29, 1981. On November 18, 1982, appellant moved for a speedy trial alleging his witnesses are becoming unavailable. The case was then set for trial on March

17, 1983, some four months later, because of the court's crowded docket.

The State then sought a postponement of the March setting because the prosecutors were involved in a capital murder case. The case was then reset for August 18, 1983, some five months later, again due to a crowded docket. The case did not go to trial on such date. Appellant's motion to dismiss was filed on August 30, 1983, and was denied. On August 31, 1983, without waiving his motion to dismiss, appellant filed a motion for postponement for want of a witness, alleging necessity for the testimony of the two corroborating witnesses and that such witnesses could probably be located. The trial court granted the postponement but expressly denied appellant's request to reconsider the August 30, 1983, motion to dismiss. The case went to trial on November 1, 1983, and one of appellant's corroborating witnesses could not be found for testimony.

The four guidelines set out in *Barker v. Wingo*, cited in the majority opinion, have been met in the instant case. A delay of nine months from the filing of appellant's motion for speedy trial is excessive under the circumstances of this case. Trial schedules of the prosecutors and the court's crowded docket are soft excuses for denying appellant's constitutional right to trial for a period of nine months. Appellant properly asserted his right to a new trial; his fear of losing his witnesses materialized and he was denied the testimony in person by one of his witnesses, apparently due to the delay of his trial.

Appellant was denied his constitutional right to a speedy trial and his motion to dismiss should have been granted. The judgment should be reversed and the case remanded for entry of an order of dismissal.

BURDOCK, Justice, dissenting in part and concurring in part.

I dissent to that part of the majority opinion on the State's motion for rehearing which found that the State should be permitted to elicit testimony regarding a prior trial as set forth in appellant's ground of error number two.

The testimony is correctly set forth in the majority opinion, but the conclusion reached in that opinion cannot be justified on the basis of the testimony in the record. The statement of appellant does not fall within the exception set forth in *Ochoa v. State*, 481 S.W.2d 847 (Tex.Crim.App.1972). Even taken out of context, it was not a statement which inferred exemplary conduct or implied that Prescott had never been in trouble before. It at most showed an ignorance of the legal procedures involved in taking a witness' statement.

Most damaging to the State's position is a statement made by the prosecutor during the hearing outside the presence of the jury, where he stated:

MR. BAYS: Your Honor, we feel like the statement and context in which it was made was *intended to tell the jury or convey to the jury this witness's naivete regarding the criminal justice system,* and that certainly is not the case. [Emphasis added.]

I believe that the district attorney's summation of the event was not correct; appellant is naive, but merely as to his attorney's procedure for taking statements that are later used in the criminal justice system and this does not fall within the exception outlined by the Court of Criminal Appeals. The State would have us stretch this exception much too far in order to bring Prescott's statement within that exception. The State agrees that the rule in *Ochoa* is controlling here.

In their motion for rehearing, the State now maintains that the appellant may not have intended to mislead the jury, but the impression the jury is left with after the testimony is the controlling issue. In support thereof, the State presents three cases.

While I do not disagree with the State's "misinterpretation theory", it is misapplied to the instant case. To apply that theory to the instant case would require us to

engage in an after-the-fact intrusion into the minds of the jury.

In *Whittle v. State,* 179 S.W.2d 569 (Tex. Crim.App.1944), the defendant testified that he had only been convicted of four offenses and the State was permitted to correct defendant's testimony by asking him if he had also been previously convicted of four other offenses in the State of Oklahoma. After this question was asked, the defendant promptly recanted his prior testimony and agreed he had eight previous convictions. *Id.* at 573.

In *Thomas v. State,* 530 S.W.2d 834 (Tex. Crim.App.1975), the defendant was convicted of robbery by firearms and testified as to his qualifications for a probated sentence by telling the jury the following in answer to his attorney's question:

Q Is there anything else that you can think of that you might tell this jury that would give effect to this request for probation?

A Yes. There is something I would like to add, that *I've never been in any type of trouble like this.* And its been a great mental strain on me for these past two years, for the simple reason that I have to live with myself constantly. [Emphasis supplied.]

*Id.* at 837.

On cross-examination the State examined the appellant concerning his prior criminal conduct and asked him if he knew he had been identified as having committed a robbery by assault on another date, to which appellant replied in the affirmative. *Id.* at 837.

*Reed v. State,* 644 S.W.2d 494 (Tex.App. —Corpus Christi 1982, pet. ref'd) is another case where the defendant mentioned part of his past criminal history which began as a young boy and failed to mention more recent and serious arrests. As in the other cases, the State in *Reed* was permitted to question the defendant about omitted offenses.

These three cases relied upon by the State are clearly distinguishable from the instant case on their facts. There can be no question that each of the three defendants above should have known enough about their prior arrests or convictions to present accurate testimony. In each case the testimony was a clear distortion of fact to obtain a less severe punishment.

Here, appellant's response to his attorney's question failed to establish that he was familiar with the art of law practice and in the absence of other proof the State has read too much into the question and appellant's response.

I would sustain appellant's second ground of error and remand this case to the trial court for a new trial.

SPURLOCK, II, J., JOINS.